STATE OF MISSOURI, EX REL. ATTORNEY-GENERAL, Appellant, *v.* THOMAS W. WOOD ET AL., Respondents.

January 2, 1883.

1. CORPORATIONS. —A substantial compliance with conditions attached to a grant of corporate franchises is all that is required.

2. CAPITAL STOCK. — The statutory requirement that one-half of the capital stock "has been actually paid up in lawful money of the United States" is substantially complied with, if the corporation has property whose market value is greater than the par value of the stock.

3. —— QUO WARRANTO — EVIDENCE. — In *quo warranto* to forfeit the franchises of a private corporation, the court may consider testimony tending to show that one of the corporators procured the commencement of the proceeding in bad faith and for his private purposes.

APPEAL from the St. Louis Circuit Court, HORNER, J. *Affirmed*.

ALEX. MARTIN and FRANK K. RYAN, for the appellant.

JOHN G. CHANDLER, for the respondents.

BAKEWELL, J., delivered the opinion of the court.

This is a proceeding in the name of the state at the relation of the attorney-general, to deprive of its franchises, the Wood Medicine Company, a corporation of which the other defendants are stockholders. The petition alleges that it was alleged in the articles of incorporation that all the stock has been subscribed and paid up in lawful money of the United States, and that this allegation was false ; that none of the stock had ever been paid up ; and that, for this reason, the procuring of the issuance of a certificate of incorporation was a fraud and a usurpation of franchises in violation of the statute.

James Maguire, one of the defendants, filed no answer. Defendants Wood, Driskell, and the corporation, the Wood Medicine Company, answered, admitting the execution, acknowledging, and recording of the agreement of incorporation, and the issuing of the certificate of incorporation. They say that Wood and Driskell, as corporators, are carrying on the business of the corporation, and that

James Maguire, the other corporator, did so with them from the organization until June, 1880, when, under cover of these proceedings, he set to work to destroy the corporation. They admit that, by the articles, the capital stock was fixed at $10,000. They deny all allegations as to false statements in the articles of incorporation. The answer contains allegations as to how and when the stock was paid, and how it was owned, and says that defendant James Maguire, who has withdrawn from the management of the corporation, and is infringing its property rights, has, by false allegations, induced the attorney-general to institute these proceedings, which are really being prosecuted by the attorneys of Maguire. There was a reply denying the new matter.

The cause was tried by the court, a jury being waived. No declarations of law were asked or given, and the finding was for the defendants, and the information was dismissed. Nothing is saved as to the rulings as to evidence.

As this is not an equitable proceeding, we have nothing to do with the weight of the evidence ; and, as every presumption is in favor of the action of the trial court, we are only to determine whether, upon the evidence in the case, the finding was illegal.

It appeared that for a long period of years before the organization of the Wood Medicine Company, J. & C. Maguire had been in co-partnership as druggists in St. Louis, and had been largely engaged in manufacturing certain preparations known as Maguire's Family Medicines. These proprietary medicines had been very extensively advertised, at a great expense, and had an established reputation. They derived their value mainly from the notoriety they had acquired, and they were well known to the trade. If properly managed, a clear income of $10,000 a year could be made out of their manufacture and sale. A wholesale druggist testified that he was well acquainted with the medicines, and that to have a right to manufacture and to use the receipts, cuts, and labels would be worth a year's profit,

or $10,000. It was admitted by the state that this testimony would be corroborated by three other witnesses, who, for this reason, were not examined.

Just before the articles of incorporation were executed, James Maguire was carrying on this medicine business, in which his brother, Constantine Maguire, had a nominal, but no real, interest. James Maguire had then on hand about $700 worth of goods, and also a boiler and other furniture used in the business, worth $600 to $800. He had besides hypothecated about $2,800 of goods to secure notes to the amount of $1,800. It was then proposed that Wood and Driskell should purchase of Maguire fifty-five one-hundredths of this property and form a corporation to carry on the business; the capital stock was to be $10,000, to be subscribed by these three corporators. James Maguire admits that he said to Wood and Driskell that the property was very valuable, and Wood swears that Maguire named $40,000 as its value.

Constantine Maguire then assigned in writing to James Maguire all his interest in the firm and its medical preparations and property, and all right to use the name of J. & C. Maguire, and bound himself not to put up or sell these medicines. James Maguire then assigned to Wood fifty-five one-hundredths in the same property, and rights to use of receipts and name; and Wood assigned to Driskell ten one-hundredths of the same property. Wood paid the money ($2,000) to take the goods out of pledge, immediately after the organization of the company. The company at once made contracts for $5,000 of advertising, to be paid within sixty days. This money Wood says he agreed to furnish and did furnish, and every contract made by the firm was fulfilled, and all its debts paid. The corporators caused their articles to be recorded and filed, and obtained their certificate of incorporation. These articles stated that the capital stock is $10,000, divided into a hundred shares, all of which has been *bona fide* subscribed, and

all paid up in lawful money of the United States, and that it is in the custody of the persons named in the articles as the first board of directors of the corporation.   The articles state that the company is formed to manufacture and sell the proprietary medicines known as J. & C. Maguire's Family Medicines, and for the purpose of buying and dealing in drugs and oils and paints.   Of the stock, forty-five shares were issued to James Maguire, forty-five shares to Wood, and ten shares to Driskell.

James Maguire afterwards withdrew from the management.   Constantine Maguire, contrary to his agreement, began the manufacture of these medicines, and did so under the advice of James Maguire; and James Maguire furnished money to Constantine Maguire to pay the counsel who set on foot these proceedings, and who was authorized by the attorney-general to act for him in the premises.   James Maguire admitted that, since the formation of the company, he had been offered par for his stock.

On the evidence the trier of the fact might very well find, and evidently did find, that the stock was in good faith paid up when the articles were signed.   The statute provides, however (Rev. Stats., sect. 926), that the articles shall set out that one-half of the par of the stock " has been actually paid up, in lawful money of the United States, and is in the custody of the persons named as the first board of directors."

In conditions attached to a grant of corporate franchises a reasonable and substantial performance, according to the intent of the grantor, is required.   Shep. Touchstone, 133 ; 15 Wend. 291.   A failure literally to comply with conditions subsequent, where there is a substantial performance, has never been held a cause of forfeiture.   The condition, in the present case, is a condition precedent ; but we think that, if the defendant showed a substantial compliance, in accordance with what must have been the intention of the legislature, that is enough.   The rule in regard to acts of

mis-user and non-user is, that they must relate to matters of the essence of the contract between the sovereign and the corporation ; and we see no reason why that rule should not be applied in the present case.    Where duties are imposed upon a corporation from motives of public policy, a total neglect of the duty justifies a judgment of forfeiture.    But where the departure is not important, and neither the public nor the state can have any interest in the omission to perform exactly what is prescribed, judgment of forfeiture will not be entered, because the courts proceed with extreme caution in proceedings for the forfeiture of a corporate franchise, and the abuse must be plain.    *Harris* v. *Railroad Co.*, 51 Miss. 602.

If it appear that, at the date of signing the articles, the stock was fully paid up as to fifty per cent, in property fully worth in money fifty per cent of the stock, the object of the provision we are considering seems to be attained. It must be immaterial to the state, and to the public dealing with the corporation, that the money is not actually on hand.    Money is a mere measure of value.    The corporation is not bound by law to keep fifty per cent of its stock on hand in cash ; and, if the directors have that sum on hand when the articles are signed, they may at once purchase goods with it.    If it clearly appears that they have on hand when the articles are signed, or immediately after the certificate of incorporation is issued, and when the company goes to work, goods with which money to the amount of fifty per cent of their stock may be acquired, there seems to be a substantial compliance.    In the present case, the par of the stock was $10,000.    The cash required was, therefore, $5,000, and there was evidence from which the trier of the fact may have found, and perhaps did find, that there was on hand, in the control of the directors when the articles were signed, property worth four times $5,000, in addition to $2,000 cash, placed by one of the corporators in the control of the directors on the next day after the arti-

cles were signed, and on the first day of the existence of the company. On the case as presented by the record, therefore, and in the absence of any declaration of law by the trial court, indulging, as we must, every presumption in favor of its action, we are unable to see that it committed error in dismissing the proceeding.

We think, too, that the court might take into consideration the evidence as to circumstances tending to show the character of the proceeding. A private person is not allowed to institute proceedings for a forfeiture, in a matter concerning the public alone. Ang. on Corp., sects. 742, 746; Dill. on Corp., sect. 899. The court did not allow the defendants to go so fully into the relations of James and Constantine Maguire to the prosecution as they offered to go. Some testimony as to this point was excluded that perhaps was competent; but enough appears to warrant, though not to necessitate, the inference that the prosecution was instigated for private purposes, and contrary to the spirit and meaning of the transactions between the Maguires and the other corporators.

The judgment is affirmed. All the judges concur.