THE STATE *ex rel.* KANSAS CITY V. EAST FIFTH STREET RAILWAY COMPANY *et al.*, *Appellants.*

|140 539|
|145 574|

Division Two, July 6, 1897.

1. **Practice** : REMEDY FOR FORFEITURE OF CORPORATE FRANCHISES. A proceeding by *quo warranto* is the proper remedy to forfeit the corporate franchises granted a street railway company.

2. **Distinctions.** The difference between the charter or the franchise of being a corporation and the franchises of a corporation independent of the charter, is lengthily distinguished in the opinion.

3. ———— : PROPERTY. The franchise of being a corporation can not be transferred by ordinary conveyance, nor sold under execution, unless the statutes of the State so provide. But its corporate franchises, such as the privilege of laying railroad tracks on designated streets, of running cars thereon and taking tolls, can be transferred by voluntary conveyance or sold under execution against the corporation.

4. ———— : ———— : SUBJECT OF CONTRACT: FORFEITURE. The franchise of a corporation given it by ordinance to construct, operate and maintain a street railway, is of legislative origin; is an executed contract on the part of the State, the consideration for which is the benefit the public will derive from the public use and exercise of the easement, and like other contracts it may be forfeited upon conditions broken.

5. **Granting of Franchises**: MUNICIPAL AGENCY. The franchise given by city ordinance to a corporation to construct and operate a street railway, comes from the State, which, in granting it, acts through the city as its agent; and such agent can not contract away or abridge the sovereign power of the State to proceed by *quo warranto* to have such franchise forfeited.

6. **Quo Warranto in Name of City.** An ordinance of Kansas City that provided that, on condition broken, the forfeiture of a franchise to a street railway "may be had by proceedings instituted by said city in its own name," at most only provided the city another remedy besides the one already in existence of a proceeding in the name of the State.

7. ———— : PROCEEDING IN EQUITY. A proceeding in equity is not the proper remedy to enforce the forfeiture of a franchise.

8. **Abandonment of Franchise**: FORFEITURE FOR NON-USER. The facts of this case reviewed, and the conclusion reached that the franchise was forfeited on the ground of non-user.

9. ———: ———: INSOLVENCY. In considering the question of forfeiture the insolvency of the company is of no importance except so far as it may have a bearing on the question of abandonment by the company of its franchise. The company may have been insolvent, but if it continued to discharge its duties to the public, that fact could not aid the forfeiture of its franchise.

10. ———: ———: ESTOPPEL. The facts of the case reviewed and it is held that relator is not estopped to maintain this suit.

11. ———: ———: ———: WHEN PLEADED. An estoppel *in pais* must be pleaded before it can be considered by the court.

12. ———: ———: WAIVER. The city ordinance provided that proceedings to enforce a forfeiture of the franchise to a street railway company, should be commenced within six months after such forfeiture accrued." This suit was not begun till eighteen months thereafter. *Held,* that the city did not thereby waive its right to forfeiture because it had no right to contract with defendant that non-user by the corporation of its tracts for any length of time should not act as a forfeiture.

13. ———: ———: PUBLIC AND PRIVATE USE. A city has no right to grant the use of its streets for any other than a public use.

*Appeal from Jackson Circuit Court.*—Hon. J. H. Slover, Judge.

Affirmed.

*Johnson & Lucas* for appellants.

(1) The corporation franchise may exist in full force, even though the corporation never acquires any property, or rights, and this corporate franchise is not property in the ordinary sense of the term, and can not be transferred by voluntary conveyance, or by sale under execution unless the statutes of the State so provide. Angell & Ames on Corp. [8 Ed.], secs. 4 and 737; 1 Waterman on Corp., sec. 4; 1 Woods' Railway Law, sec. 13; *Stewart v. Jones,* 40 Mo. 140; *Bank v. Earle,* 13 Peters (U. S.), 595; *Morgan v. Louisiana,* 93 U. S. 223; *People ex rel. Mayberry v. Mutual Gas Light Co.,* 38 Mich. 154. (2) The ordinances set out

in the information are simply contracts between the relator and the defendant, in which the State has no interest whatever, and may be canceled by a court of equity at the instance of the relator without the intervention of the State. *State ex rel. v. Railroad*, 85 Mo. 282; *Railroad v. Springfield*, 85 Mo. 674; *City of Kansas v. Corrigan*, 86 Mo. 67; *Hovelman v. Railroad*, 79 Mo. 643; *People v. M. G. Co.*, 38 Mich. 154; *Att'y-Gen. v. Albion A. & N. Ind.*, 52 Wis. 469. (3) An information in the nature of a *quo warranto* can not be maintained to divest a corporation of its property rights, whether such rights were obtained by municipal ordinance or other contract. *State ex rel. v. Hannibal G. R. Co.*, 37 Mo. App. 496; *State ex rel. v. Miller*, 66 Mo. 344; *Railroad v. People*, 73 Ill. 541; *State v. Smith*, 55 Texas, 447; *People v. M. G. L. Co.*, 38 Mich. 154. (4) The opinion of the trial court and its judgment herein is predicated on the insolvency of the defendants alone, and on this fact the court finds and declares a forfeiture of contract rights. (5) Mere non-user for any length of time does not of itself work an abandonment. *Roanoke Investment Co. v. Railroad*, 108 Mo. 62; *Barlow v. Railroad*, 29 Iowa, 276. (6) The defendant was subjected to annoyance, harassments and litigation, preventing the operation of its road, both by relator and third parties, and this was a sufficient excuse therefor. *State ex rel. v. Cochrens*, 25 La. Ann. 356; *City of Chicago v. Railroad*, 105 Ill. 73.

*H. C. McDougal* and *C. O. Tichenor* for respondent.

(1) That there is a difference between the charter and a franchise independent of it, there is no question, and this proceeding is based upon that distinction.

*Railroad v. Commissioners*, 112 U. S. 619; *Morgan v. Louisiana*, 93 U. S. 223; *California v. Railroad*, 127 U. S. 40; *City v. Wheeler*, 88 Wis. 615; *New Orleans v. Delamore*, 114 U. S. 501; *Wheat v. City*, 88 Va. 743; *Mobile v. Railroad*, 84 Ala. 119; *Williams v. Railroad*, 130 Ind. 71. (2) These franchises must be of a public character as the city has no authority to grant its streets for a private use, and for private gain alone. *Railroad v. Railroad*, 105 Mo. 581; *State v. Murphy*, 34 S. W. Rep. 51. (3) These franchises come (indirectly, it is true) from the State. *City of St. Louis v. Boffinger*, 19 Mo. 13; *Taylor v. City*, 22 Mo. 105; *Railroad v. Railroad*, 105 Mo. 592; *Transportation Co. v. Chicago*, 99 U. S. 641; *Port of Mobile v. Railroad*, 84 Ala. 120. (4) To us it seems strange that one may contract for a proceeding in equity, when the facts demand a suit at law, or for a proceeding by *mandamus* when the facts call for a suit by replevin. If this be so, we can not see why parties can not contract, that in case of litigation upon the same, the appeal shall go to this court when the law says it shall go to the court of appeals. *Fath v. Railroad*, 105 Mo. 545; *The Pres., etc. v. The State*, 19 Md. 239; *Capitol City Water Co. v. State ex rel.*, 102 Ala. 231. (5) Equity is not the remedy to enforce a forfeiture of a franchise, and cases cited by appellant do not show it to be so. *Republican v. Brown*, 19 U. S. App. 203; *Att'y-General v. Tudor Ice Co.*, 104 Mass. 340; *National Bank v. Matthews*, 98 U. S. 628; *Neiser v. Thomas*, 99 Mo. 224; *People ex rel. v. Hall*, 80 N. Y. 117; *Ames v. Kansas*, 111 U. S. 459; *Reed v. C. & O. Canal*, 65 Me. 134; *Chesshire v. The People*, 116 Ill. 493; *The State ex rel. v. Boal*, 46 Mo. 531; *The State ex rel. v. Jenkins*, 25 Mo. App. 484; *Kayser v. Trustees of Bremen*, 16 Mo. 90; *State ex rel. v. Westport*, 116 Mo. 582; *State ex rel. v. McReynolds*, 61 Mo. 212. (6) Nonuser of a franchise is ground for its forfeiture in a

direct proceeding for that purpose. Counsel say that the court below gave judgment "on the insolvency of the defendants alone." This is not so. If a corporation does its duty to the public, lives up to the conditions of its franchises, it makes no difference to the public whether it is solvent or insolvent. *Distilling, etc. Co. v. People ex rel.*, 156 Ill. 448; *State ex rel. v. Meek*, 129 Mo. 436; *Roanoke Co. v. K. C. & Co.*, 108 Mo. 64. (7) Counsel says that there has been a waiver by the city. The city had no power of waiver. *State v. Murphy*, 34 S. W. Rep. 51; *I. C. & B. R. Co. v. Railroad*, 20 N. J. Eq. 69.

BURGESS, J.—This is a proceeding by the State at the relation of Kansas City, Missouri, by Marcy K. Brown, prosecuting attorney of Jackson county, Missouri, by *quo warranto* to oust defendants of their corporate franchises granted to them by said city by ordinances, to construct, maintain and operate a street railway on certain streets in said city, upon the ground of their failure to comply with said ordinance, and the consequent forfeiture of their franchise rights under said ordinance.

The petition alleges that the relator was on the ninth day of May, 1889, and ever since has been, a municipal corporation under the laws of the State of Missouri having full power and control over its streets. That defendants are corporations under the laws of this State, except defendant Thornton, who is trustee in a deed of trust executed by the East Fifth Street Railway Company on the first day of November, 1890, on the franchises hereinafter described. That by certain ordinances passed by said city, the right was given and accepted by said defendant railway company to construct, maintain and operate a street railway on certain of its streets. That by reason of said

ordinances the defendant railway company claims the right to maintain and operate a street railway over certain streets named in said ordinance, and had in fact laid its tracks on said streets. But that said railway company had failed for eighteen months prior to November 12, 1892, to run cars over said streets, and had never complied with the provisions of said ordinances, although notice was given by relator to said company to run cars over said streets, but that it refused and still refuses so to do. That said railway company has failed and neglected for more than eighteen months prior to November 12, 1892, to keep in repair its tracks and roadbed and permitted its tracks to become a nuisance and has abandoned the rights granted in said ordinances.

The answer admits the acceptance of the ordinances by the railway company and alleges that said ordinances constitute valid and subsisting contracts between· said city and defendant railway company. The answer also admits that defendant railway company and defendant trust company are now and were during the dates mentioned in said information, corporations organized under the laws of the State of Missouri, and that the deed of trust mentioned in the information has not been released or satisfied, and that defendants by reason of said ordinances, claim the right to run, maintain and operate a street railway over the streets named in said ordinances. It then alleges that section 17 of ordinance number 42389 requires an action for forfeiture to be brought within six months after cause of forfeiture has arisen, and that causes are alleged in the information to have arisen eighteen months prior to the filing of the information. That defendant railway company was unlawfully prevented by the police of the city of Kansas from constructing its railway on Fifth street from Grand avenue

to Main street, and was harassed by litigation, whereby its credit was impaired and its financial operations so embarrassed that it was unable to procure funds necessary to complete its railway, and was compelled to mortgage the same in its uncompleted condition to pay the loss sustained by reason of the acts of the city of Kansas, and to cease, temporarily, the operation of its cars, but intends to resume such operation at the earliest moment the financial condition of the public and itself will permit.

It appears from the record that in December, 1881, by an ordinance of Kansas City a franchise was granted to certain persons named in said ordinance, to construct and operate a street railway on certain streets in that city.

The franchise was to continue for twenty years; the company was to keep the tracks in repair and the spaces between the tracks and for eighteen inches on the outside well paved; cars were to be regularly run for not less than sixteen hours per day, "during each and every day of the entire year." With the consent of the grantees of the franchise, a subsequent order was passed whereby the franchise was extended for thirty years from September 1, 1885, and the starting point fixed at Fifth street and Grand avenue, instead of Fifth and Main streets. In June, 1888, another ordinance was passed by said city which recites in its preamble, the following: "Whereas, the East Fifth Street Railway Company is the successor and owner of all franchises and ordinances above granted." This ordinance then, among other things, regulates the pavement of spaces between the tracks, and the keeping of them in good condition and repair. Section 12 of this ordinance provides for the equipment of the road and the running of the cars, and gave defendant

VOL. 140 mo—35

the right to collect a fare of five cents for each passenger. By a still later ordinance passed also in June, 1888, defendant was granted a franchise to extend its road to the eastern limits of the city. It had the right to operate its cars on this portion of its route by endless cable or noiseless steam power, with smokeless fuel. Section 17 of this ordinance reads as follows: "If the said railway company shall at any time fail, neglect or refuse to obey and comply with any one of the provisions of this ordinance, then said company shall forfeit all rights, powers and privileges by this ordinance granted and conferred, and this ordinance shall be null and void. Such forfeiture and such annulling of this ordinance may be had by proceedings instituted by the city of Kansas, in its own name and against said company, in a court of record in Jackson county, Missouri; and on proof of such failure, neglect or refusal on the part of the said company; *provided*; that if any such proceedings be not commenced within six months after such failure, refusal or neglect of said company to comply with any one of the provisions of this ordinance, then as to such failure, refusal or neglect, the city shall be deemed to waive the effect thereof under this section of this ordinance."

From the date of the original ordinance, December, 1881, to the time of trial in the court below, the road was only operated for two or three months and then by electric cars. The company then suspended operating the road from eighteen months to two years, after which it ran some steam cars from one and a half to two years. For about three years before the time of the trial of this cause it ran no cars at all, and did nothing toward the operation of the road. Some time prior to the bringing of this proceeding, they sold their cars to some company in Texas, and paid the proceeds upon a mortgage upon the road, upon which was due about

$110,000. The company is insolvent, but some of its officers testified that they expect to run it again. They seemed to have no idea when the company will operate the road again. The evidence on the part of defendant railway company showed that defendant was prevented by the Kansas City police force from laying its tracks on Fifth street between Grand avenue and Main street; that the company was harassed by litigation by the city and property owners, which greatly depreciated the value of its property. It also tended to show that said company had not abandoned its rights under said ordinances.

No notice was ever given by Kansas City to defendant railway company to run its cars. Nor was the information filed for more than six months after the alleged grounds for forfeiture arose.

At the conclusion of the evidence the court, at the request of the relator, gave the following declaration of law:

"The court declares the law to be that if defendant has ceased to operate its road, that it has sold its rolling stock and has none with which to operate its road, and that it has no means with which to purchase more stock and is heavily in debt, then judgment must go for relator."

The court gave judgment of **ouster** against the defendants, from which they appeal.

1. Defendant's contention is that *quo warranto* is not the proper remedy in this case; that the State has no interest in this controversy; that the "franchise" granted by it and the only one that it is interested in, is not the subject-matter of this litigation; that the questions involved are of a personal nature, between the relator on the one hand, and the defendant railway company on the other, the relator alleging failure to comply with the terms and conditions of a contract

between it and defendant, and the defendant denying non-compliance and pleading estoppel, a question that can be fully settled by a court of chancery in an action brought by the relator against the defendant. Upon the other hand it is claimed that there is a difference between the charter and a franchise independent of it, and that this proceeding is based upon that distinction.

In the case of *Railroad v. Commissioners*, 112 U. S. 619, the court says: "The essential properties of corporate existence are quite distinct from the franchises of the corporation. The franchise of being a corporation belongs to the corporators, while the powers and privileges vested in and to be exercised by the corporate body as such, are the franchises of the corporation. The latter has no power to dispose of the franchise of its members, which may survive in the mere fact of corporate existence, after the company has parted with all its property and all its franchises."

It may be said that corporate existence is as much a franchise as the franchises of the corporation. The former is not property in the ordinary acceptation of the term, can not be transferred by ordinary conveyance, nor by sale under execution, unless the statutes of the State so provide, while corporate franchises are property, can be transferred by voluntary conveyance or by sale under execution against the corporation. *Railroad v. Delamore*, 114 U. S. 501. In the case in hand the privilege of laying its tracks on the designated streets, to run cars thereon, and to charge and receive fares from persons riding on its cars were franchises of the defendant railway company, without which the charter would be of no value. Such privileges were not mere licenses. A different view, however, seems to have been taken in the case of the *People ex rel. v. Mutual Gaslight Co.*, 38 Mich. 154, in which it was ruled that the right to lay pipes in the streets of a city is not a State

franchise but a local easement resting only on a contract or license, the violation of which does not concern the State, and is open to legal remedy. A similar view seems also to have been taken by the Supreme Court of Illinois in the case of *Belleville v. Citizens' Horse R. Co.*, 152 Ill. 171. But those cases we think not in line with the great weight of authority. Thus Mr. Justice FIELD, in speaking of franchise in *Morgan v. Louisiana*, 93 U. S. 223, says: "But the term must always be considered in connection with the corporation or property to which it is alleged to appertain. The franchises of a railroad corporation are rights or privileges which are essential to the operations of the corporation, and without which its road and works would be of little value; such as the franchise to run cars, to take tolls, to appropriate earth and gravel for the bed of its road, or water for its engines, and the like. They are positive rights or privileges, without the possession of which the road of the company could not be successfully worked. Immunity from taxation is not one of them. The former may be conveyed to a purchaser of the road as part of the property of the company; the latter is personal, and incapable of transfer without express statutory direction." A franchise is of public concern which can not be exercised by individuals at pleasure, but is of legislative origin, and from that source it must derive its power and authority to acquire rights and privileges for the public good. "It is an executed contract on the part of the State, the consideration for which is the benefit which the public will derive from its use and exercise." *City v. Wheeler*, 88 Wis. 615; *California v. Railroad*, 127 U. S. 40; *New Orleans Waterworks Company v. Rivers*, 115 U. S. 674; *Wheat v. City Council of Alexandria*, 88 Va. 742; *Port of Mobile v. Railroad*, 84 Ala. 119; *Baltimore Trust, etc. v. Mayor, etc.*, 64 Fed. Rep. 153.

This court has recognized the rights of street railways in the streets of a municipality as franchises and as vested rights which might be mortgaged by the company to whom the franchise belonged. *Hovelman v. Railroad*, 79 Mo. 643.

While the franchises involved in this controversy were derived directly from the city by the East Fifth Street Railway Company, under ordinances passed under the grant of power contained in the city charter, that power was conferred upon the city by the General Assembly, so that the power came indirectly from the State, and in granting it the State acted through the city as its agent. *Transportation Co. v. Chicago*, 99 U. S. 641; *Port of Mobile v. Railroad*, 84 Ala., *supra*. The power of the city to grant the franchises in question is unquestionable.

We do not think, however, that the fact that the franchises in question are in a sense contractual in their nature, is a barrier to the prosecution of this suit if the facts alleged and proven be sufficient to oust defendant company of its franchises, *notwithstanding* section 17, *supra*, of the ordinance passed in June, 1888, provides that in case of failure, neglect or refusal by the defendant railway company to obey and comply with any of the provisions of said ordinance, said company shall forfeit all rights, powers and privileges conferred thereby, and that such forfeiture may be had by proceedings instituted by said city in its own name, against said company in a court of record in Jackson county, Missouri. The sovereign power of the State to proceed against defendant company by *quo warranto* for forfeiture of its franchises even at the relation of the city could not be contracted away or in any way abridged by the city. At most such a provision in the ordinance only provided the city another remedy. *Fath*

*v. Railroad*, 105 Mo. 545; *The Pres., etc. v. The State*, 19 Md. 239.

Moreover, a proceeding in equity is not the proper remedy to enforce the forfeiture of a franchise. Pomeroy, in his work on Equity [2 Ed.], sec. 459, says: "It is a well settled and familiar doctrine that a court of equity will not interfere on behalf of the party entitled thereto, and enforce a forfeiture, but will leave him to his legal remedies, if any, even though the case might be one in which no equitable relief would be given to the defaulting party against the forfeiture." The same rule is announced in High on Extraordinary Remedies [2 Ed.], sec. 660, in which it is said: "The dissolution of a corporation and the revocation of its franchises are generally considered matters of legal rather than of equitable cognizance, and unless a court of chancery is especially empowered to divest a corporation of its franchises, the more appropriate remedy for this purpose is by information in the nature of a *quo warranto*." *Att'y-General v. Tudor Ice Co.*, 104 Mass. 239; *National Bank v. Matthews*, 98 U. S. 621. In *Hovelman v. Railroad*, *supra*, this court said: "It is the settled rule that the acts of a corporation can be assailed for abuse or excess of its corporate powers only in a direct proceeding brought by the State for that purpose." The city granted the franchises in the interest of the public, and we see no reason why she should not be relator in this proceeding to have the franchises forfeited in the interest of the public also, if the facts and circumstances in proof justify such a result.

The question then arises, was the non-user of the franchises, by defendant company under the circumstances disclosed by the record, sufficient to justify the court in declaring their forfeiture? In considering this question it may be said that the insolvency of the cor-

poration is of no importance except in so far as it may have a bearing upon the question of abandonment of its franchises by defendant, for if defendant continued to discharge its duties to the public, it makes no difference whether it was solvent or not. Were it otherwise, very many corporations might be ousted of their franchises at any time, to the great detriment of the members thereof as well also as the general public for whose benefit public corporations and franchises are presumed to be granted. The sale, however, by the defendant company of all of its rolling stock and its failure to operate its road for so long a time, and then not in accordance with the terms of the ordinances, tended very strongly to show an abandonment by defendant of its franchises. But whether there was an abandonment by defendant of its franchises or not, the evidence clearly shows that the ordinances granting the railroad company the franchises were never complied with. Electric cars were run for about three months and then steam cars which it had no right to run, except upon the eastern extension of the road. It ran steam cars for about eighteen months, and for three years next preceding the trial, it did not operate its road at all, while under the ordinances its cars were to be regularly run not less than sixteen hours per day, during every day in the year.

In the case of *The Roanoke Inv. Co. v. Railroad,* 108 Mo. 50, it is said: "But while it is true that mere non-user will not amount to an abandonment, it is well settled that an easement acquired by grant or its equivalent may be lost by abandonment. To constitute an abandonment of an easement acquired by grant, acts must be shown of such an unequivocal nature as to indicate a clear intention to abandon. *Curran v. Louisville,* 83 Ky. 628; *Dyer v. Sanford,* 9 Metc. 395; *Hayford v. Spokesfield,* 100 Mass. 491. It is said, how-

ever, that abandonment will be more readily inferred when the easement was granted for public purposes than when it was created for private use." In Beach on Private Corporations, sec. 45, it is said: "It is conceded that a corporation may forfeit its charter or franchises for willful misuser or non-user thereof. For it is a tacit condition annexed to the creation of every corporation, that it shall be subject to dissolution by forfeiture of its franchise for willful misuser or non-user in regard to matters which go to the essence of the contract between it and the State." On the same subject, Morawetz on Private Corporations, sec. 1018, says: "It has accordingly been held in various cases that if a corporation has assumed the performance of duties for the benefit of the public generally, it can not neglect the performance of these duties without incurring a forfeiture of its franchises. Thus it is the duty of a corporation to build a turnpike road to maintain its road in repair as a thoroughfare for the public use. . . . The same rule undoubtedly applies to other corporations of a similar character, such as ferry and bridge companies, canal companies, gas companies, etc."

The generally accepted doctrine is that the omission of an express duty imposed by the charter of a corporation is cause for its forfeiture, and in such circumstances the sovereign who granted the charter may insist on resuming the grant for breach of the duty imposed. *Commonwealth v. Bank*, 28 Pa. St. 383; *Attorney-General v. Railroad*, 6 Ired. 456; *Railroad v. Casey*, 26 Pa. St. 287. And where there has been a willful misuser or non-user by a corporation it is subject to dissolution by forfeiture of its franchises. *Mumma v. Potomac Company*, 8 Peters, 281; *Terrett v. Taylor*, 9 Cranch, 51; *Chicago Life Ins. Co. v. Needles*, 113 U. S. 574; *People v. Railroad*, 126 N. Y. 29. "The rule in

regard to acts of misuser and non-user is, that they must relate to matters of the essence of the contract between the sovereign and the corporation; and we see no reason why that rule should not be applied in the present case. Where duties are imposed upon a corporation from motives of public policy, a total neglect of the duty justifies a judgment of forfeiture." *The State ex rel. v. Wood*, 13 Mo. App. 142; *Harris, Att'y-Gen. v. Railroad*, 51 Miss. 602. One of the duties imposed upon defendant by ordinance which it accepted and in which the public had an interest, was to run its cars sixteen hours every day in the year with which there was no compliance on its part, but a total neglect of its duty, hence non-user. It was held in the *State ex rel. v. Hannibal & Ralls Co. Gravel Road Co.*, 37 Mo. App. 496, that *quo warranto* would lie where a corporation is charged with misuser or non-user of its franchises.

2. But it is insisted by defendant that relator is estopped to maintain this action upon the ground: *First*, that by its military force it prevented the company and still prevents it from completing its contract and entering on the enjoyment of its grant; *second*, that the city by its common council passed an ordinance repealing, or attempting so to do, the grant made to defendant; *third*, that relator compelled the defendant to tear up its turntable, and that by reason thereof, necessitated and required the defendant to change its equipment and to dispose of the equipment purchased by it and then in use; *fourth*, that relator, by litigation instituted before defendant ceased to operate the road, rendered impossible the operation of the road on the part of defendant, and is by reason thereof estopped from taking advantage of its own wrong.

With respect to the first proposition W. J. Smith,

president of defendant company, testified that even if the city had allowed the company to lay a track from Main to Walnut street that it would not have done the company any good until they got some right of way from the Metropolitan from Walnut to Grand avenue, which it never succeeded in doing. It seems that Fifth street between Walnut and Grand avenue, upon which there were at the time two parallel tracks owned by the Metropolitan Street Railway Company, is only thirty feet between the curbs, and that there was no room for another track; hence unless the defendant company could in some way have acquired the right to use the Metropolitan tracks, that part of the route from Main to Walnut, even had it been constructed, would have availed nothing; therefore no justification or excuse for not operating the road.

Nor do we see how the fact that the city may have passed an ordinance repealing, or attempting to so do, the grant made to defendant, could have afforded it any excuse for non-compliance with the ordinances.

It is well settled that estoppel *in pais* must be pleaded, and as the answer contains no allegation to the effect that the city compelled defendant to tear up its turntable, that question can not be considered by this court.

The records of the suits mentioned in the fourth proposition are not copied into the bill of exceptions; so that it is impossible to tell anything about the issues involved in them, or what possible effect they may have had upon defendant's failure to operate the road. The only litigation mentioned in the answer seems to have been by the city, and the evidence shows that it resulted in favor of defendant. But even the record in this suit is not in the bill of exceptions.

5.  A further contention is that the record shows that the relator waived all the causes of forfeiture com-

plained of.    This contention is based upon section 17
of the ordinance, *supra*, which in case of forfeiture by
defendant of its franchises for failure to comply with
the provisions of said section, provides that such for-
feiture may be had by proceedings instituted by said
city in its own name in a court of record in Jackson
county, Missouri, and that if any such proceedings be
not commenced within six months after such forfeiture
has accrued, the city shall be deemed to waive the effect
of such forfeiture.    The streets of Kansas City are for
the use of the general public, and its officers had no
right to contract with defendant by ordinance or other-
wise that non-user of its tracks by the corporation for
the period of six months, or any other length of time,
should not operate as a forfeiture of its franchises.
To do so would be to recognize the authority of the
city to grant the right of the use of its streets for pri-
vate purposes which it clearly has no right to do.    To
lay railroad tracks in the streets of the city, and then
not use them, would not be a public use, and it is only
in that sense that a city has a right to grant the use of
its streets to any person or corporation, for the pur-
pose of operating cars thereon.    To grant the use of
its streets for a private use would be a misappropria-
tion of the street, and without authority upon the part
of the city.    If the city had the right to provide by
ordinance against the forfeiture of the franchises of
defendant on account of the non-user of its tracks for
a period of six months, it had the same right to pro-
vide against its forfeiture for an indefinite period and
thereby convert the use, which was and could only be
public, to a private use.    *State v. Murphy*, 34 S. W.
Rep. 51.    In the case of *The President, Manager and
Company v. The State of Maryland*, 19 Md. 278, it was
said:    "The consequence of the argument, that an
inability to keep the road in good order, owing to a

want of means, relieves the company from the duties imposed upon it by its charter, would be that the State would be obliged to permit the existence of roads impassable and even dangerous. Such, it may safely be asserted, is without support from authority. In fact, the conclusion would seem to be inevitable that if (as is conceded) the State can authorize the construction of a railroad anywhere within her jurisdiction, such authority is absolute, and can impose upon her no restriction, no loss of any other of her sovereign rights and powers and can not operate to close the doors of her own courts against her, when she wishes to inquire into the delinquencies of a corporation created by her and responsible to her. [Citing cases.] . . . The rule is that as against the State, no waiver can be presumed, unless a clear intention to waive the forfeiture, with a full knowledge of the facts, can be gathered from the legislation relied on to prove such intention. . . . Moreover, to maintain that such an act is a waiver of any cause of forfeiture happening up to that time, and then to argue that the charter can not be vacated, because the road is now (as the plea states) in as good order as it was then, is to make the condition of the road at that time, and not the charter, the standard of the obligations of the appellants for all time. Such, of course, can not be the true measure of their liability. It is to the charter, and the charter alone, that we must look for the character and extent of their rights and duties. Nor would it by any means follow that because the State did not choose, in 1839, to enforce a forfeiture, she designed to declare that so long as the road was maintained as it then was, the company should be unmolested. The fourth plea insists that the conduct of the State, up to 1858, amounts to a waiver; that is, that the silence of the State, her failure to authorize proceedings against the company,

is to be held to be equivalent to a declaration that no cause of forfeiture had occurred. This, obviously, does not come up to the terms of the rule we have stated above. . . . And to hold the silence of the State from 1839 to 1858 to be a conclusive argument against her present right to revoke franchises, when the conditions are forfeited on which those franchises were granted, would be to make the long continued clemency and forbearance of the State the means of destroying her rights and restricting her powers."

Moreover, the city had no power or authority by ordinance or otherwise to take away from its sovereign the right to proceed by its public officer, the prosecuting attorney of the county, against the defendant by *quo warranto* for ouster of its franchises upon the ground of their forfeiture.

The judgment is affirmed. GANTT, P. J., and SHERWOOD, J., concur.