## STREET RAILWAY FARES ON LEASED AND PURCHASED LINES.

[Circuit Court of Lucas County.]

STATE, EX REL SHEETS, ATTORNEY-GENERAL, v. TOLEDO RAILWAY & LIGHT CO.

Decided, June 20, 1902.

*Street Railways—Franchises of—Conditions Imposed as to Rates of Fare—Violated on Purchased and Leased Lines—Quo Warranto by the State the Proper Proceeding Against Offending Company— Allegations Sufficient Against Demurrer—Action ex contractu by City—Sections 2501, 2502 and 2505a.*

1. An ordinance prescribing terms and conditions upon which a street railway franchise may be used has the force and effect of an act of the Legislature, and to prevent violation of the terms of such franchise an action may be brought *ex contractu* by the municipality or in *quo warranto* by the state.
2. Where a company has acquired lines by lease or purchase, under the authority of 2505a, and is collecting fares for one continuous ride in the same general direction over its said lines so purchased within the corporate limits in excess of the maximim rate of fare to be charged over any one of the separate lines, *quo warranto* by the state is the proper proceeding to prevent further offending in that regard.
3. An allegation setting forth such offending in general form is good against demurrer.

PARKER, J.; HAYNES, J., and HULL, J., concur.

This is an action in *quo warranto*. The relator states in his petition:

"That the defendant, The Toledo Railway & Light Company, is a corporation duly organized under the general corporation laws of the state of Ohio for the incorporation of street railways, and has been such since July 1, 1901, in the city of Toledo, county of Lucas and state of Ohio; that said defendant became and is so incorporated as aforesaid for the purpose of constructing, maintaining, operating, extending, purchasing, acquiring, leasing and owning street railroads and railroads operated as street railroads, to be operated by electric power, together with all the property and all the franchises, rights and privileges, respecting the use and operation of the same, and

for all purposes incidental thereto, in said city of Toledo, Lucas county, Ohio:

"That prior to August 10, 1901, the Toledo Traction Company was the owner of, and was operating and maintaining all the lines of street railway existing within said city of Toledo, and owned, enjoyed and operated all the rights, privileges, franchises, property and street railway lines theretofore owned, operated and enjoyed by the following persons and corporations, to-wit: the Central Street Railway Company; The Metropolitan Street Railway Company; David Robison, Jr., Trustee; The Toledo Electric Street Railway Company; The Tolelo Traction Company.

"That said several persons and corporations above named operated and maintained their respective lines of street railways upon and over the streets, alleys, ways, lands and highways of the city of Toledo, and enjoyed the rights, privileges and franchises thereto annexed, by virtue of separate grants and franchises made by said city of Toledo to each of said persons and corporations, upon the condition, among others therein expressed, that the grantee of the privilege and franchise, the successors or assigns of such grantee, should not charge a higher rate of fare than five cents for each adult passenger for one continuous route or ride in the same general direction over all the lines therein authorized to be constructed and operated; that said several persons and corporations above named accepted their respective grants conditioned as above set forth and enjoyed the rights, privileges and franchises therein granted, and constructed, operated and maintained lines of street railways upon and over the streets, alleys, ways, lands and highways of the city of Toledo thereunder; that each and every of said grants of franchises, rights and privileges so made by the city of Toledo to said several persons and corporations above named, was for a period of twenty-five years, and all of said grants so made are at this date unexpired and each and all of said grants have a long period of time, to-wit, more than seven years yet to run.

"That said The Toledo Traction Company constructed, operated and maintained its said lines of street railway upon and over the streets and public ways of the city of Toledo, by virtue and under the condition of the said several grants so made by the city of Toledo to the several persons and corporations above named, as the successor or assign of said persons and corporations.

"That on August 10, 1901, said defendant, The Toledo Railway & Light Company, acquired by purchase from said The

Toledo Traction Company all the lines of street railway exist-
ing within the corporate limits of said city of Toledo, together
with all the rights, privileges and franchises thereto belonging
and connected therewith, and said defendant has ever since
said August 10, 1901, been, and now is, the owner of, and has
since said date been and is now operating and maintaining all
said lines of street railway; that said The Toledo Railway &
Light Company is maintaining, controlling and operating all
of said lines of street railway in the city of Toledo as the suc-
cessor and assign of said The Toledo Traction Company, and
under and by virtue of and subject to the conditions of the
grants made by the city of Toledo as aforesaid, to said several
persons and corporations hereinbefore named, and has no other
right or franchise to construct, operate or maintain lines of
street railway upon the streets, alleys, highways and public
places in the said city of Toledo.

"That said defendant, The Toledo Railway & Light Com-
pany, as such corporation aforesaid, has ever since August 10,
1901, continuously within this state, to-wit, at the city of To-
ledo, in the county of Lucas, offended against the laws of this
state and the provisions of an act for its creation and grossly
misused its corporate authority and the franchises and privi-
leges conferred upon it by law and especially in the following
particulars, to-wit:

"First. That it has refused and does refuse to carry and
transport passengers over its said lines of street railways at
the rates of fare established by the contract of its predecessors
in rights and interests, and fixed by the grants of rights, privi-
leges and franchises from the city of Toledo, under which it
operates said lines of street railways upon and over the streets,
alleys and public highways of said city of Toledo.

"Second. That it has established and demands and receives,
and requires the public to pay, a higher rate of fare for one
continuous route or ride in the same general direction over all
its said lines of street railway, so purchased as aforesaid, within
the corporate limits of the said city of Toledo, than the maxi-
mum fare charged over any one of the several separate lines of
street railway, so purchased prior to such purchase aforesaid.

"Third. That it has established, charged, demanded and
collected a rate of ten cents for one continuous route or ride
in the same general direction over its lines of street railways,
within the corporate limits of the city of Toledo, so purchased
and operated as aforesaid, and that the highest rate of fare
charged for one continuous route or ride in the same general
direction, within the corporate limits of the city of Toledo, over

any one of said several lines of street railways so purchased as aforesaid by the defendant, The Toledo Railway & Light Company, prior to said August 10, 1901, has been five cents.

"Wherefore the relator prays the advice and judgment of the court in the premises and due process of law against said The Toledo Railway & Light Company, and that it be adjudged to have forfeited its franchises and be ousted therefrom or from the franchises so abused by it."

The complaint made against the defendant here, in substance, is: That it acquired these lines by purchase in pursuance of the authority of the statute which imposes as one of the conditions of purchase that it should not charge over any of the lines running in the same general direction a greater rate of fare than was charged as the maximum charge over any one of the constituent lines before such purchase and sale. And it is said that defendant is violating this condition, and, in that respect, is unlawfully exercising the franchise.

The defendant demurs to the petition on the grounds:

"1.    That said Circuit Court of Lucas County, Ohio, has no jurisdiction of the subject of the action.

"2.    That the plaintiff has not legal capacity to sue in this action.

"3.    That the petition does not state facts sufficient to constitute a cause of action in *quo warranto*."

The second ground of demurrer is not urged or relied upon, and we have not been able to discover any reason for challenging the capacity of the plaintiff to sue or of the relator to represent the plaintiff.

The first ground of the demurrer is based upon the claim and contention of the defendant that the subject-matter of the suit is founded on contract and not on franchise, and that if the defendant is guilty of any wrong, the petition discloses that such wrong consists of the violation by the company of the contract between the company and the city, though the company does not concede that there is any contract existing that forbids its charging fares as alleged in the petition. Perhaps, more accurately stated, the contention is that the subject-matter might appropriately be regulated by contract, but that it is not and can not be an element of franchise, and if regulated

by contract, the remedy must be by an action *ex contractu*, and can not in any event be by an action in *quo warranto*.

By the company it is conceded that the privilege of constructing and maintaining tracks, poles, wires, etc., in the streets of the city, and operate cars upon the same, is a franchise emanating from the state, but it contends that the charge for the service is an exercise of a natural right, which does not emanate from the state as a privilege or franchise, although it may be regulated by contract with the municipality where the railways are operated.

Sections 2501 and 2502, Revised Statutes, provide for the granting by municipalities of permission to persons or corporations to construct and operate street railways upon "terms and conditions" to be prescribed by the council by ordinance, and that such grant shall not be made "except to the corporation, individual or individuals that will agree to carry passengers upon such proposed railroad at the lowest rate of fare," etc.

We understand that it is contended by the relator that the terms and conditions thus imposed are conditions imposed upon the exercise of the franchise; that though the franchise emanates from the state, it is not to be enjoyed except by permission of the municipality and upon terms and conditions prescribed by the municipality. That this authority to prescribe terms and conditions also emanating from the state and to be exercised by an agency of the state for the public benefit, amounts to an authority to mould or modify the franchise, and that the conditions upon which the franchise is to be enjoyed are limitations upon and integral parts of the franchise, so that the exercise of the franchise in violation of such conditions may be said to amount to an unlawful exercise of a franchise and to authorize *quo warranto* proceedings as provided by Section 6760, Revised Statutes, and the sections following.

We do not find that we are called upon to decide upon this contention in passing upon this demurrer, but the question is likely to be directly presented later on in the case, and therefore we take occasion to remark that we do not regard the fact that these conditions are matters of contract, or arising out of contract between the railway company and the municipality, as a

fact decisive of the question, or at all singificant, for franchises in general are founded upon contract between the state or authority granting the same and the companies to which the same are granted.

As to the character of the franchise, it is said in *California* v. *Railroad Co.*, 127 U. S., 1, 40, by Mr. Justice Bradley:

"Generalized, and divested of the special form which it assumes under a monarchical government based on feudal traditions, a franchise is a right, privilege or power of public concern, which ought not to be exercised by private individuals, at their mere will and pleasure, but should be reserved for public control and administration, either by the government directly, or by public agents acting under such conditions and regulations as the government may impose in the public interest, and for the public security."

As a matter of convenience, I read from Anderson's Dictionary of Law, at page 474, a short paragraph, which cites *Chincleclamouche Lumber Co.* v. *Commonwealth*, 100 Pa. St., 438, 444; and *The Binghamton Bridge*, 70 U. S., 51.

"A grant of a corporate franchise by an act of legislation, accepted by the grantee, is a contract between the state and the grantee, the obligation of which a subsequent Legislature can not impair."

In *State* v. *Railway Co.*, 40 N. W. Rep., 487, the syllabus reads:

"Under Section 1862, Revised Statutes, a municipal ordinance granting to a street railway corporation a franchise to occupy and use public streets for the purposes of its railway, has the force and effect of a statute of the state; and for a violation of the provisions of such ordinance an action may be maintained under Section 3241, Revised Statutes, to vacate the charter or annul the existence of such corporation."

The case contains an interesting discussion which I will not pursue by reading. So far as we can discover, the statutes of the state of Wisconsin upon this subject are not materially different in respect to the extent of authority conferred and the character of a franchise granted, from the statutes of the state of Ohio upon the same subject.

Further on the subject of franchises I refer to 2 Spelling Injunctions and Other Extra. Rem., Section 1807:

"Where the statute by legal exercise of a right which, at common law, was private, is made to depend upon compliance with conditions interposed for the security and protection of the public, the necessary inference is that it is no longer private, but has become a matter of public concern—that is, a franchise, the asumption and exercise of which without complying with the conditions prescribed would be a usurpation of a public or sovereign function."

We are cited by counsel for the defendant to *People* v. *Gas Light Co.*, 38 Mich., 154. The decision of Campbell, chief justice, and the bench was made up of very able judges, among whom was Thomas M. Cooley, and we have to say with respect to that decision simply this: That we are unable to reconcile it with what we understand to be the law and the theory of the law of the state of Ohio upon this subject. It seems to us that if a case of that character should arise in this state, it must be held that the privileges conferred there were in the nature of franchises, and that the conditions imposed were in the nature of conditions to the exercise of such franchises; but, however that may be, we do not understand the case to be in point upon the precise question presented by this demurrer, for the reason that we understand the question arises here upon the granting of a franchise by a state, by an act of legislation which itself imposed the conditions upon which the franchise is to be exercised, and does not involve the question of the effect of conditions imposed by a contract in the form of an ordinance entered into between the company and the municipality. The fact that the city, or individuals, may have a remedy by actions *ex contractu* or otherwise and can not proceed by *quo warranto*, affords, we think, no valid objection or obstacle to the state availing itself of this extraordinary remedy for the advantage of the general public, or for the enforcement of the rights of the general public, for it must be remembered that the use of the streets of the city and the occupation thereof by the tracks, cars and business of transportation companies are subjects in which the whole public, not merely residents of the

municipality, are interested and have rights, and in imposing these conditions to the exercise of these franchises, we think the city acts as the agent of the state and for the whole public, not merely for the city in its corporate capacity or for the residents of the city, and that the state may interfere when these conditions in which the public are interested are not complied with. And we believe that *quo warranto* is a proper form of proceeding to reach the end aimed at.

In *State* v. *Traction Co.*, 18 C. C., 490, which was a suit in *quo warranto,* to interfere with and prevent a street railroad from carrying freights through the city of Dayton, on the ground that it was exercising a franchise not conferred upon it by law, it was held that it was exercising a right upon which the municipality had no right to place a limitation, and that an ordinance which undertook to prevent it from carrying freight was invalid for that reason. But, with respect to the remedy pursued, if it had turned out that the contention of the relator was correct as to the right involved, we understand that proceeding by *quo warranto* was approved of. I read from page 217 a part of the opinion by Summers, J.:

"This brings us to the question of the validity of the provision of the ordinance prohibiting the carrying of freight. It is contended, however, that an ordinance granting permission to construct a street railway is a contract (*Cincinnati Street Ry. Co.* v. *Smith,* 29 Ohio St., 291, 306; *Cincinnati & S. Ry. Co.* v. *Carthage,* 36 Ohio St., 631; *Columbus* v. *Street Railroad Co.,* 45 Ohio St., 98); that *quo warranto* is not the remedy for enforcing a contract (*State* v. *Railroad Co.,* 50 Ohio St., 239); and further, that a special remedy is provided by Section 1777, Revised Statutes, which makes it the duty of the city solicitor, whenever an obligation or contract made on behalf of the corporation granting a right or easement is being evaded or violated, to apply for the forfeiture or the specific performance of the same.

"It is true that such an ordinance is in some respects a contract, and so is a franchise. And in some states it is held that the right acquired by ordinance to construct a street railway is merely a license or easement, and that *quo warranto* is not the proper remedy to enforce the ordinance."

Citing many cases, and among them *People* v. *Gas Light Co.,* 38 Mich., 154.

He then proceeds to say:

"But the better considered cases hold that the permission given by ordinance to construct a street railway in the street is a franchise granted by the state through the agency of the municipality, and that a violation of the same may be inquired into in *quo warranto.*"

Citing cases from Wisconsin, Alabama, and *State* v. *Street Ry. Co.*, 41 S. W. Rep., 955.

And when this case came to the Supreme Court we find from the report in *State* v. *Traction Co.*, 64 Ohio St., 272, that this course of proceeding to inquire into the question whether or not the company was unlawfully exercising its franchises, seems to have received the approval of the court.

I can not see that *State* v. *Dairy Co.*, 62 Ohio St., 350, which has been cited by counsel and discussed somewhat, throws any direct light upon this precise question involved here.

This complaint is based upon a clause in Section 2505a, Revised Statutes, that being the form in which the act was passed on April 23, 1898 (93 O. L., 214). This statute confers upon companies of this kind power to lease or purchase property of a railroad company, and to acquire its franchises. It points out the course of proceeding in order to accomplish this result, and contains this provision in the last clause:

"Provided, that whenever any such lease or purchase is made as herein provided, there shall be no increase of the existing rates of fare by reason of such lease or purchase, nor shall any fare be charged upon any of the separate routes so leased or purchased in excess of the fare charged over such separate routes prior to the lease or purchase thereof, and provided that when any such lease or purchase is made as herein provided, the fare charged for one continuous route or ride in the same general direction over all such leased or purchased lines within any municipal corporation shall not exceed the maximum fare charged over any one of said lines prior to such lease or purchase."

It is distinctly averred in the petition that this purchase of these different lines by the defendant was made under authority of this statute, and it is distinctly averred that the company is offending against this statute, in that it is charging more for a

continuous ride in the same general direction over, such line or
purchased lines within the corporation than the maximum fare
charged over one of said lines prior to such lease or purchase.
These averments in the petition are very general in form, but we
think they are sufficient to withstand a demurrer; whether they
would be sufficient as against a motion to make them definite and
be sufficient as against a motion to make them definite and
certain, we are not called upon to say.   A corporation can not
dispose of its franchises; a corporation can not acquire the
franchises and property of another corporation, except under
authority of legislation authorizing it (*Branch* v. *Jesup,* 106
U. S., 468, 484, 488).   And we are of the opinion that the com-
pany having exercised this authority under and by virtue of
the statute, since it could not otherwise acquire the property,
avails itself of power conferred upon it by the statute subject
to the conditions imposed by the statute, and that the attorney-
general may by *quo warranto* require it to observe such con-
ditions.   Whether these lines and routes with respect to which
it is said the company is offending, do run in the same general
direction so that it may be required to reduce its fares, is a
question we have not yet reached.   The petition does not en-
lighten us except by general terms; further pleadings in the
case may present the question.   Whether the company may avail
itself of this authority without being obliged to observe the
conditions on the ground that it had existing rights conferred
upon it by previous legislation, or by existing contracts between
it and the municipality, is another question, only hinted it and
not discussed and not now present in the case, but a question
which we imagine is looming up to bother us on after occasions.
There is nothing in the pleadings as they stand to indicate that
there is any such vested right being interfered with by the
conditions imposed.

Something has been said in the course of the discussion about
the extent of the relief that may be granted.   It is sufficient to
say that the court has power to mould the remedy to meet the
exigencies of the case.   The court will not be called upon to go
farther than would be necessary to require the company to de-
sist from exercising its franchises in charging and collecting

fares in so far as they may be in excess of the rates fixed by the statute; but that is a matter not presented by the demurrer and may be for further consideration. We hold that the petition is good as against a demurrer, and the demurrer is overruled.

*John M. Sheets, M. R. Brailey* and *John P. Manton*, for plaintiff.

*Smith & Baker*, for defendant.