# State, *ex rel.* Weatherly, *et al. v.* Birmingham Water Works Co.

## *Quo Warranto.*

(Decided November 25, 1913.   64 South. 23.)

1. *Quo Warranto; Purpose; Corporate Franchise.*—Information in the nature of quo waranto lies not only to prevent usurpation of corporate franchises or charters, but also to correct abuses, and this is true whether the writ be to dissolve the corporation or merely to annul a particular franchise.

2. *Same.*—The provisions of section 3513, Code 1907, do not deny the right of the state to maintain quo warranto to enforce the forfeiture of a franchise for its violation.

3. *Same; Statutory Remedy.*—The provisions of sections 5450-5072, Code 1907, are intended to furnish a remedy co-extensive in scope with the common law information in the nature of quo warranto, and as to practice and procedure are exclusive of the common law which they have supplanted.

4. *Same; Remedy.*—The remedy by quo warranto cannot be used for the enforcement or forfeiture of a municipal contract, but may be resorted to correct breaches of the contract which amount to abuses of a franchise for the purpose of forfeiting a franchise or the charter of the offender.

5. *Same; Water Supply.*—The information seeking to forfeit the franchise of a water company for furnishing impure water need not explain why the water is inferior or allege the evidence upon which such charge is based.

6. *Same; Relief.*—If the information sufficiently alleges causes of forfeiture the court may administer relief appropriate to the general purpose of the proceedings; relator's theory of the case or of the appropriate relief being immaterial.

7. *Same; Election.*—If the allegations of the information authorize relief under the provisions of section 5450, or 5453, Code 1907, the petitioner must elect under which section he will proceed as he cannot proceed under both.

8. *Corporations; Public Service; Franchise; Forfeiture.*—Where, by legislative authority a municipality grants a franchise to a public service corporation, whether general or special, it is granted by the state just as if it was directly granted by the legislature, and hence, the abuses of such franchise may be punished by forfeiture at the suit of the state.

9. *Same.*—An ordinance granting a franchise to a public service corporation is subject to rescission by the municipality for breach in so far as it is contractual in its nature, but in so far as it grants a franchise it cannot be annulled by the municipality for abuse

[State, ex rel. Weatherly, et al. v. Birmingham Water Works Co.]

except by express authority, as such annullment can only be had at the suit of the state, or contingently in a suit by the municipality under the provision of section 3513, Code 1907.

10. *Same.*—The willful and persistent failure to discharge its franchise duties on the part of a public service corporation is ground for forfeiting the franchise and dissolving the corporation.

11. *Same; Violation of Conditions.*—A municipality has the implied power to prescribe reasonable conditions precedent to the exercise of the franchise by a public service corporation, the violation of which authorizes a revocation of the franchise; mere regulation of the future exercise of the franchise and of a commercial nature are deemed conditions subsequent, the violation of which will not work a forfeiture.

12. *Same; Abuse of Franchise.*—Construing sections 5453, and 5465, with section 5450, Code 1907, it is held that a proceeding may be maintained by the state to forfeit the franchise of a public service corporation for abuse or misuse of a lawfully existing franchise, as well as to prevent an assumption of a franchise not lawfully created.

13. *Statutes; Construction.*—The "argumentum ab inconventi" does not justify a court in extending a statute beyond the reasonable import of its language to embrace a supposed necessity, although such reasoning may determine the court to give the statute a liberal rather than a narrow interpretation.

14. *Evidence; Judicial Notice.*—The court judicially knows that the question of the duty of a water supply company to lay service pipes from its mains to the property of applicant for water service is a question on which the courts do not agree.

15. *Appeal and Error; Harmless Error; Amending Pleadings.*— Where no jury had been demanded at the time of the amendment, an objection to an amendment to the information in quo warranto that it made section 5450, Code 1907, the basis of the information, instead of section 5453, Code 1907, is purely technical, especially where the information for such amendment also stated a case under section 5450, Code 1907.

16. *Waters and Water Courses; Public Supply; Forfeiture of Franchise.*—Although not expressly forbidden by its franchise, unreasonable discrimination in service and charges by a water company, would be an implied breach of its franchise duties, subjecting its franchise to forfeiture, as would be an illegal combination to fix the price of the service.

17. *Same.*—The charter requiring it to furnish pure and good water, if the water actually supplied to consumers was not "wholesome" as alleged, the company was guilty of a violation of its charter.

18. *Same; Grounds.*—The willful refusal of a water company to supply a particular person with water is not ground for a forfeiture of its franchise, unless such refusals are shown to be numerous, willful and repeated after reasonable and proper demands.

19. *Same.*—In the absence of circumstances of abuse or aggravation, the willful neglect of a water company to supply six fire hydrants with sufficient water pressure, would not authorize a forfeiture of its franchise.

20. *Same.*—If it should appear upon a trial of the fact, and not merely from the pleadings, that the company had been guilty of a number of willful, persistent breaches of its franchises, such franchise may be forfeited, although particular breaches might not of themselves be grounds for forfeiture, even if willful.

21. *Same.*—It is an implied condition to the exercise of the grant of a franchise to a water supply company that it will develop facilities for such service and reasonably perform its franchise contract, and willful and repeated violations of such duty is ground for forfeiture of its franchise.

22. *Same.*—If a duty sought to be imposed upon a public service corporation does not arise by clear implication, a failure in good faith to perform such duty cannot be regarded as a willful breach of duty, the proper procedure being to determine in an appropriate action whether the duty exists, and if determined to exist, a subsequent violation of the same may be made grounds for forfeiture of the franchise.

23. *Same; Service Mains.*—The failure of a water supply company to lay service pipes from its mains to the property of applicant for water service is not such a willful breach of its franchise duty as to be grounds for forfeiture of its franchise.

24. *Same.*—If under its franchise and contract, a water suply company is required to furnish water at flat rates for dwellings, the willful and persistent charging of meter rates to consumers for such service, is a breach of its franchise obligations authorizing their forfeiture.

25. *Same.*—Where the charter required it to furnish pure water the water supply company must supply water which is free from foreign matter and bacterial elements, so as to make it wholesome and fit for domestic use, but it is not required that it be chemically pure.

26. *Same; Allegation of Breach.*—It is not material that the misconduct alleged is charged to be a breach of the water supply company's "franchise contract" instead of merely its franchise, as they are the same, or that the prayer for relief seeks a forfeiture of the "franchise contract."

(Anderson, C. J., and Mayfield, J., dissent.)

APPEAL from Jefferson Circuit Court.

Heard before Hon. E. C. CROWE.

Quo warranto by the State, on the relation of James Weatherly, against the Birmingham Waterworks Company. From a decree for defendant, relator appeals. Reversed and remanded.

The information charges that the Birmingham Waterworks Company has severally breached said franchise contracts, dated June 2, 1888, and forfeited its right,

franchise, and privileges thereunder, by acts and omissions as follows:

A. "Defendant's said ditch or canal through which it supplies water from Five Mile creek, runs for, to wit, five miles to a territory which is inhabited by large population, to wit, 2,000, and located in said territory are railroad shops, dwellings, and out-houses, and also farms and dairies, with cattle and domestic animals, and portions of said territory, especially during periods of heavy rainfalls, drain into said ditch, canal, which, except for a small part thereof, to wit, one mile, is open and unlined, and the waters therein become polluted in various ways, and disease germs, bacteria, excrement, and other unwholesome matter are drained and deposited in the water in said ditch or canal in sufficient quantities to render the same unwholesome, in which condition it flows into said reservoir or basin at North Birmingham in said city, whence it is pumped by defendant into its said water mains in said city. Which said conditions have existed, to wit, three years next prior to the filing of this information, during which time the water which defendant has supplied to its water consumers under said contract in territory A, through said ditch or canal, following the heavy rainfall, and during rainy periods, has, by reason of the willful and long-continued neglect of defendant, not been wholesome."

J. "Defendant for, to wit, three months, commencing January 1, 1902, willfully neglected to furnish wholesome water to many, to wit, more than 500 of its said consumers, of water for domestic purposes in said territory A of said city."

K. "The defendant for, to wit, the months of October, November, and December, 1912, willfully neglected to supply many, to wit, more than 20 families of its

consumers water for domestic purposes under said contract in the southern section of said territory A, with water for domestic use in sufficient quantity for the reasonable use of same, for said purpose."

L. Same as K except that the time alleged is more than a year next prior to the filing of this suit, and from time to time, and on divers dates and occasions.

M. "The defendant for, to wit, the months of October, November, and December, 1912, willfully neglected to supply many, to wit, more than six, of the fire hydrants on its main, located at various points in the southern section of territory A, with water in sufficient quantity and pressure, for the reasonable use of same, whereby scores of buildings were deprived of adequate fire protection."

N. "Defendant for, to wit, more than a year next prior to the filing of this suit, has willfully required applicants for its water service in said territory A, under said contract for lots abutting streets on which its mains were laid, to lay or provide service pipes from such mains to the property line, at the expense of such applicants as the condition precedent to furnish such water supply."

Q. "The defendant has for, to wit, more than six months next preceding the filing of this petition, generally refused to provide necessary service pipes, at its own expense, for applicants for water service in territory A in said contract for lots abutting on street on which its mains were laid."

P. "The defendant has for, to wit, more than three months next prior to the filing of this suit, willfully and persistently charged a part of its water consumers of water for domestic purposes in said territory A, over their objections, at meter rates instead of at flat rates set out in said contract."

Q. "By reason of the willful neglect of defendant, the water which defendant has supplied to its consumers of water for domestic purposes in said territory A under said contract, from said ditch or canal during, to-wit, the three years next prior to the filing of this information, has at times not been wholesome."

R. Same as Q, except the time is laid at 12 months.

S. "By reason of the willful and long-continued neglect of defendant, the water which defendant supplied to its consumers of water for domestic purposes in said territory A under said contract from said ditch or canal, during, to wit, the 12 months next prior to March 1, 1912, was not wholesome."

T. Same as S, except the time laid is three years next prior to the filing of the information.

U. Same as S, except the time alleged are the months of January and February, 1912.

V. "The water which defendant supplied its customers of water for domestic purposes in said territory A under said contract from said ditch or canal during the months of January and February, 1912, was not wholesome."

W. Same as V, except the time was laid for three weeks commencing November 15th.

X. Same as K.

Y. Same as A, except for the words "ditch or canal," where same last occur therein, they substitute therefor the words "waterworks mentioned in the section or paragraph of the information or petition marked fourth."

Z. Same as A with the same amendment as in Y.

Specifications B to I, inclusive, are the same as A, except that they vary as to the time and extent of the breach. Paragraph 6 is as follows: "That on, to wit December 2, 1912, the board of commissioners of the city of Birmingham duly adopted an ordinance numbered

126c, declaring such franchise contract, dated June 2, 1888, and others, breached, rescinded, discharged, and annulled, which ordinance was duly published, a copy of which is made an exhibit hereto." The prayer was for writ of quo warranto or other appropriate writ directed to defendant, requiring it to show by what right or authority, if any it can, it is severally holding and exercising said franchises and privileges, and that upon a final hearing of this case a decree be entered declaring that defendant is unlawfully holding or exercising said several franchises and privileges, and that the said franchise contract be adjudged and declared severally forfeited and annulled, and defendants excluded from said rights, privileges, and franchises. There was also a general prayer for relief.

The demurrers were sustained and petition amended: (1) By substituting for the first three lines of paragraph 5 the following: "That the acts and omissions of defendant herein complained of are as follows, to wit." (2) By adding to the specifications at the beginning of each the following words: By reason, etc. (3) By striking out the last part of paragraph 6, and substituting therefor the statement that, notwithstanding the aforesaid matters and things, defendant is nevertheless continuing in the exercise of said rights, privileges, and franchises. (4) By changing the prayer so as to read "and to show by what right or authority, if any it can, it is holding and exercising said corporate rights, privileges, and franchises, and to show by what warrant of law, if any it can, it is acting as a corporation, and that upon a final hearing of this cause your honor will adjudge and declare that defendant has, by reason of said matters and things hereinbefore complained of, forfeited its said corporate rights, privileges, and franchises, and that judgment be rendered against defendant, that

it be excluded from said rights, privileges, and franchises and be dissolved." The demurrers were sustained to the petition as amended, relator declined to plead further, and there was judgment for respondent. The petition exhibits the legislative charter of the Birmingham Waterworks Company, and its franchise contract with the city of Birmingham, and also the ordinance of December 2, 1912, purporting to rescind and annul all contracts between the city of Birmingham and the waterworks company, which matters are sufficiently referred to in the opinion.

ROMAINE BOYD, M. M. ULLMAN, and GEORGE HUDDLESTON, for appellant. Since the case of *Birmingham v. State, ex rel. Sparks,* 166 Ala. 122, or the case of *State, ex rel. Sigsbee v. Birmingham,* 160 Ala. 196, must sooner or later be overruled, and the court decide as to which one of the two cases it will adhere to, counsel cite the following cases as overwhelmingly supporting the rule declared in the case of *State, ex rel. Sigsbee v. Birmingham, supra,* 69 N. W. 925; 68 N. W. 767; 46 N. E. 1075; 93 N. E. 400; 80 N. E. 277; 54 N. W. 380; 124 Pac. 637; 41 Pac. 923; 92 N. W. 385; 11 S. W. 1930; 129 N. W. 296; 62 N. W. 498; 85 S. W. 361; 16 Wis. 20 Ohio St. 18. The provisions of section 3513, Code 1907, give an additional or cumulative proceeding by municipalities, and is without reference to an action by the state, and is not exclusive of the remedies provided by sections 5450, and 5453, Code 1907, in an action by the state.—*Cap. City W. Wks. v. State,* 105 Ala. 430; *State N. O. Water Co.,* 31 South. 407; *Jaffe v. F. & D. Co.,* 60 South. 966; 185 U. S. 336; 109 N. W. 872; 152 S. W. 76; 44 S. W. 814; 41 S. W. 816; 15 Atl. 440; 61 Atl. 1099; 49 Pac. 736; 68 Pac. 946; 62 Am. St. Rep. 742; 23 Wend. 221; 4 McQuillan's Mun. Corp. sections 1666

and 1764; 32 Cyc. 1417. In view of section 140, Constitution 1901, and other sections, it may be doubted that the Legislature could have excluded the remedy by quo warranto, even if it had wished to.—41 S. W. 916; High's Extraordinary Legal Rem. section 615. The grant of a franchise by the city is a grant by the state. —*Mobile v. L. & N.*, 84 Ala. 129; 200 U. S. 304, and authorities supra. Quo warranto is the proper remedy for the acts and omissions alleged in this cause.—83 N. E. 829; 77 N. E. 245; 104 Mass. 239; Joyce on Franchises, section 486, Spelling Ext. Rem. section 1804; 32 Cyc. 1415 and 1427; 23 Wend. 575, and authorities supra; 38 N. E. 584; 23 Wend. 194, 251 and 258. It is a condition annexed to the granting of every charter or franchise that the franchise rights and privileges will be forfeited by a willful or voluntary misuser or nonuser, or by neglect.—*Mobile R. R. Co. v. State*, 29 Ala. 573; *Pascal v. Whitsett*, 11 Ala. 479; 4 G. & J. 121; 19 Md. 295; 8 Peters 281; 51 Miss. 623; 14 U. S. 443, and authorities supra where, it is held that as applied to actions in quo warranto, willful neglect means voluntary neglect, and that a franchise may be forfeited for breach of conditions therein contained. Causes of forfeiture once committed cannot be atoned for.—152 S. W. 76; 62 Am. St. Rep. 742; 68 Pac. 946; 49 Pac. 736. Where the franchise is silent as to who shall supply the service pipes or other means and instrumentalities of the service, this duty rests on the public service corporation. —*Mont. L. & W. P. Co. v. Watts*, 51 South. 726; *Brown v. Meridian*, 59 South. 795; 61 Pac. 518; 92 Pac. 533; 104 Pac. 671; 125 Pac. 769; 112 S. W. 818; 112 S. W. 680; 224 U. S. 146. The failure to supply fire hydrants with sufficient pressure for fire protection is a substantial breach of the express duties under the franchise contract.—83 N. W. 697. On these authorities it is in-

[State, ex rel. Weatherly, et al. v. Birmingham Water Works Co.]

sisted that the court was in error in its rulings on the various demurrers interposed to the information. The statutes are remedial and should be liberally construed. —*State, ex rel. Fitts v. Elliott*, 117 Ala. 172. To give the statutes any other construction than that contended for by appellant would deprive the state of any remedy in such a case as this.

FRANK SPURLOCK, PERCY, BENNERS & BURR, and LONDON & FITTS, for appellee. The court did not err in sustaining demurrers to the complaint as amended, first, because the facts alleged did not bring the case within the purview of section 5453, Code 1907, and because a complete remedy for the wrongs was provided by section 5313, Code 1907. The court has repeatedly held that chapter 128 of the Code constitutes the only system obtaining in this state as to the remedy by quo warranto.—*L. & N. v. State*, 154 Ala. 198; *State v. Elliott*, 117 Ala. 172. The contract made no provision for its forfeiture in the event of the breach of any of its terms.—32 Barb. 358; 99 N. W. 811; 27 Fed. 904; 4 McQuill. Corp. section 1665. The meaning of subdivision 1 of section 5453, Code 1907, is so plain as to be beyond controversy, and has been carefully and fully considered by our courts.—*City of N. B'ham v. State, ex rel. Sparks*, 52 South. 202. Proceedings under section 5450, Code 1907, must be tried by the judge, and jury trial may not be had, and this is not true under the provisions of section 5453.—*Taliaferro v. Lee*, 97 Ala. 99. Our statutory system does not contemplate a proceeding by the state of Alabama for the annulment of a franchise granted by a municipality, based upon a contract between a public untility corporation and the municipality, where such a proceeding depends upon proof of mere breach of its contract instead of proof of

acts offending the law of the creation of the company violating provisions by which corporations forfeit charters by abuse of powers.—*Worthington v. Gwin,* 119 Ala. 44; 19 South. 771. The distinction between contamination of water in the stream from which the supply is drawn, and its contamination as delivered into the pipes of consumer is clearly drawn.—74 N. Y. E. 136; 32 Pac. 667; 72 N. E. 314; 92 N. W. 1112; 49 Pac. 79. As to a failure to furnish service pipes to consumers, and as to the rates alleged to be charged, counsel cite.—8 Am. St. Rep. 180; 39 L. R. A. 377; 15 Atl. 442; Booth on Street Railways, section 52; *State, ex rel. v. So. B. & L. Assn.,* 132 Ala. 51; 32 L. R. A. 392; 140 Ala. 619; 61 Pac. 519; 224 U. S. 56; 25 L. R. C. 451; 132 S. W. 290.

SOMERVILLE, J.—The prolixity of the pleadings exhibited in this cause is such that detailed treatment is impracticable, if not impossible. Following the example of counsel, we shall undertake to discuss the pleadings only as they may be grouped under the several principles of law which we deem fundamental to a decision of the cause upon its merits.

The Birmingham Water Works Company was chartered by legislative act on February 13, 1885, for the express purpose of supplying the citizens of Birmingham and its suburbs with "an ample supply of good and pure water." See *B'ham W. W. Co. v. Birmingham,* 176 Ala. 301, 58 South. 204. Besides the general powers common to all corporations, the company was by this grant invested with particular franchises, including the right "to lay pipes and equeducts for conducting its water, and for that purpose make excavations through any of the streets, alleys or public grounds of the said city of Birmingham by and with the consent of the corporate au-

thorities of said city." Section 8 of the charter act specifies "that said company shall have the right to make contracts with individuals and corporations for the water to be supplied by it, and to charge for and collect such water rates and compensation therefor as may be contracted to be paid to them."—Sess. Acts 1884-85, p. 415.

On May 31, 1888, the city of Birmingham adopted an ordinance authorizing the water company to lay in its streets and public places its mains, pipes, and fixtures "for the use of said city and its inhabitants as herein provided." Section 3 of the ordinance declares "that the water so furnished shall be clear, wholesome and suitable for all domestic and ordinary manufacturing purposes, and sufficient in quantity for the use of said city and its inhabitants." Section 6 provides for street hydrants and the rate and terms of payment therefor by the city, and section 12 provides a schedule of maximum flat and meter rates to be charged domestic and other consumers. These specifications are quoted in *Smith v. Water Co.,* 104 Ala. 322, 16 South. 123. The ordinance contains sundry other provisions and requirements not necessary to be here stated, and as thus framed and passed it was forthwith adopted by the city and the water company as their mutual contract agreement to run for thirty years.

The breaches of duty charged against the respondent may be briefly summarized as: (1). Supplying to consumers in a large territory for three years next before the institution of this suit, and also during numerous specified shorter periods, by willful and long-continued neglect, water that was not wholesome. (2) Willfully neglecting for a year past, and also for three months in 1912, to supply about 20 families of its consumers in a certain territory with water sufficient for domestic

use. (3) Willfully neglecting to supply six or more fire hydrants at various points on its mains with sufficient water pressure for their reasonable use, so as to deprive neighboring buildings of fire protection. (4) Willfully refusing to provide necessary service pipes from its mains to the property line of applicants for water service in specified territory. (5) Willfully and persistently for more than three months charging a part of its domestic consumers in a specified territory at meter rates instead of at the flat rates set out in said contract. As finally amended, and in support of the amended prayer for the dissolution of the respondent corporation, the information further charges that, by reason of the willful and long-continued neglect of respondent, the water which it has supplied to its domestic consumers has not been pure for more than a year before suit filed.

Before considering the merit of the case made by the information, it will be convenient to state certain settled principles of law and public policy upon which our conclusions must be predicated:

1. It is the common law of this country, founded upon the English statute of 9 Anne, that an information in the nature of quo warranto lies in all cases originally served by the writs of quo warranto and scire facias, and embracing not only usurpations, but also abuses, either of corporate charters or particular franchises. And this proceeding is apt whether its purpose be to dissolve the corporation or to merely annul and forfeit a particular franchise.—*State v. Moore,* 19 Ala. 514, 420, 421; *State v. Light Co.,* 246 Mo. 618, 152 S. W. 67; *State v. A. & N. R. R. Co.,* 24 Neb. 143, 38 N. W. 43, 8 Am. St. Rep. 164, and note citing the authorities, 198-199; *Peter v. Kendall,* 5 Barn. & C. 703; 32 Cyc. 1425, 2; High on Ex. Leg. Rem. (3d Ed.) §§ 654,

[State, ex rel. Weatherly, et al. v. Birmingham Water Works Co.]

660, 698, 753; Spelling, Ex. Rem. § 1813; Beach on Priv. Corp. § 45; Morawetz on Priv. Corp. § 1018.

2. Our statutes (sections 5450-5472, Code 1907) first found in the Code of 1852 are intended to furnish a remedy coextensive in scope with the common-law information in the nature of quo warranto, and as to practice and procedure are exclusive of the common law which they have supplanted.—*State v. Elliott,* 117 Ala. 172, 23 South. 43.

3. Section 3513 of the Code, providing a remedy by bill in chancery in favor of municipalities against public service corporations operating under municipal franchise contracts, to enforce their performance, or in default thereof to declare such franchises forfeited and the corporations dissolved, is manifestly no bar to the remedy in the nature of quo warranto given to the state. The one looks merely to the enforcement of municipal contracts, while the other looks to the sovereign power of the state with respect to the use or abuse of franchises—which are special privileges—created by its authority, and which must as a principle of fundamental public policy, remain subject to its sovereign action in so far as the interests of the public, or any part of the public, are affected by their usurpation or abuse.—*State v. Des Moines City Ry. Co.,* 135 Iowa, 694, 109 N. W. 867, 872; *State v. Street Ry. Co.,* 140 Mo. 539, 41 S. W. 955, 38 L. R. A. 218, 62 Am. St. Rep. 742, 748: *State v. B'ham W. W. Co.,* 164 Ala. 586, 51 South. 354, 27 L. R. A. (N. S.) 674, 137 Am. St. Rep. 69, 20 Ann. Cas. 951.

4. The remedy by quo warranto cannot be used for the enforcement or forfeiture of a municipal contract, although breaches of the contract which amount to abuses of a franchise may support an information for the purpose of forfeiting the franchise or the charter of

the offender. See *State v. B'ham W. W. Co.,* 164 Ala. 586, 591, 51 South. 354, 27 L. R. A. (N. S.) 674, 137 Am. St. Rep. 69, 20 Ann. Cas. 951; *Cap. City Water Co. v. State,* 105 Ala. 406, 430, 18 South. 62, 29 L. R. A. 743.

5. A franchise granted by a municipality by legislative authority, special or general, is as much a franchise granted by the state as if it were granted directly by its Legislature.—*Port of Mobile v. L. & N. R. R. Co.,* 84 Ala. 129, 4 South. 106, 5 Am. St. Rep. 342; *State v. Railroad Co.,* 72 Wis. 612, 40 N. W. 487, 1 L. R. A. 771; *State v. Railway Co.,* 140 Mo. 539, 41 S. W. 955, 38 L. R. A. 218, 62 Am. St. Rep. 742; *San Antonio Trac. Co. v. Altgelt,* 200 U. S. 304, 26 Sup. Ct. 261, 50 L. Ed. 491; *Gainesville Water Co. v. Gainesville* (1910) 103 Tex. 394, 128 S. W. 370; 3 Dill. Mun. Corp. (5th Ed.) § 1228. It follows, of course, that the abuse of such a franchise is equally a matter of state concern, and is punishable by forfeiture at the suit of the state.

6. The municipal ordinance or resolution which grants a franchise to a public service corporation may also comprehend the terms of a contract between the municipality and the service corporation, prescribing the obligations and restraints by which each is to be governed, and the conditions upon which the franchise is granted and may be exercised. In so far as such an ordinance is merely contractual in its nature, it is subject to revocation or rescission for such material breaches of its terms as would justify the rescission of other contracts by offended parties in interest. See *Worthington v. Gwin,* 119 Ala. 44, 52-55, 24 South. 739, 43 L. R. A. 382. But in so far as it grants a franchise, or consents to the exercise of a franchise granted on that condition by the state Legislature, it cannot, at least in the absence of express authority, be revoked by

the municipality for the grantee's misconduct so as to annul the franchise—a result which can be accomplished only by judicial action at the instance of the state, or contingently at the suit of the municipality as provided by section 3513 of the Code, already alluded to.— *State v. Portage City Water Co.*, 107 Wis. 441, 83 N. W. 697; *Kaukauna, etc., Co. v. Kaukauna*, 114 Wis. 327, 89 N. W. 542; *Gas & Water Co. v. Downington*, 193 Pa. 255, 44 Atl. 282; 3 Dill. Mun. Corp. (5th Ed.) § 1304, p. 2145. Whether or not merely contractual derelictions may be such an abuse of the franchise or of the general charter as to support an action by the state for its annulment is, of course, another question.

7. It is implied, as the essential condition upon which corporate life and powers are granted to public service corporations, that they shall fairly and substantially perform the functions and discharge the duties for which they have been created. A willful and persistent failure to do so may subject their franchises to forfeiture, and themselves to dissolution.—3 Dill. Mun. Corp. (5th Ed.) § 1311; 10 Cyc. 1283 (4), 1284e; *State v. Light Co.*, 246 Mo. 618, 152 S. W. 67, 71. And this applies to all those subordinate duties and restrictions which necessarily inhere in their expressed charter or franchise obligations.

Unreasonable discrimination in service and in charges to consumers, though not expressly forbidden, would furnish an example of such breaches of implied duty on the part of a water company established to supply a town with water.—*Lumbard v. Stearns*, 4 Cush. (Mass.) 60; *State v. B'ham W. W. Co.*, 164 Ala. 586, 591, 51 South. 354, 27 L. R. A. (N. S.) 674, 137 Am. St. Rep. 69, 20 Ann. Cas. 951. See, also, 84 Am. St. Rep. 188, 189, note, where numerous authorities are collected. So, also, would illegal combinations between service

companies to fix the price of their service.—*State v. Portland Gas Co.*, 153 Ind. 483, 53 N. E. 1089, 53 L. R. A. 413, 74 Am. St. Rep. 314; *Gibbs v. Baltimore Con. Gas Co.*, 130 U. S. 396, 9 Sup. Ct. 553, 32 L. Ed. 979.

8. In so far as the provisions of a municipal franchise ordinance or contract are, either by expressed stipulation or by reasonable implication, made conditions precedent to the exercise of the franchise, their material violation by the grantee would justify a revocation by the municipality of the conditional grant or consent. Having the power to grant or consent to the exercise of the franchise, the municipality has the implied power to prescribe at least conditions which are reasonable.—3 Dill. Mun. Corp. (5th Ed.) §fl§ 1228-1230. On the other hand, mere regulations of future conduct in the exercise of the franchise, and stipulations of a commercial nature, are in general to be deemed conditions subsequent, for breaches of which the municipality may not revoke the franchise—a power which, as we have seen, resides only in courts and is to be invoked by appropriate judicial proceedings.

9. When a company is chartered to supply a city and its people with water, it is of necessity contemplated by the Legislature that such company will enter into a franchise contract with the city; and it is implied, as an essential condition of the grant, that such company will have or develop the facilities for such a service, and also that it will in fact conform its conduct and its service to the requirements of its franchise contract—at least with reasonable fidelity to all of its vital stipulations. And by willful and repeated violations of clear duty, whether of misuser or nonuser, it offends against its charter, and abuses its municipal franchise, in such sense as to subject both charter and franchise, or either, to forfeiture in the sound judicial discretion of the

court.—*State v. Light, etc., Co.,* 246 Mo. 618, 152 S. W. 67, 71. See, also, *Cap. City Water Co. v. State,* 105 Ala. 406, 430, 18 South. 62, 29 L. R. A. 743. There is no rational escape from the conclusion that, when respondent accepted the franchise ordinance and exercised the powers and privileges thereby conferred, its material stipulations were written into the franchise itself, and thereafter they were one and inseparable. To say that the powers may be retained as against the state, stripped of the obligations to secure which alone the powers were granted, is to misconceive the fundamental principles of public and private right. The mission of all public service corporations is ministry, not mastery; and willful defiance of duty merits the sting of outlawry and the penalty of forfeiture or dissolution. Every principle of law and public policy points directly to this conclusion—and with especial force where the service relates to the supply of a great commodity without which people cannot exist, and under conditions of practically perfect monopoly. Certainly no corporation worthy to live will ever suffer from such a rule.

The information in this case was evidently framed under subdivision 1 of section 5453 of the Code: "When any person usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise within this state, or any office in a corporation created by the authority of this state"—in which case an action may be brought in the name of the state against the offending party for the purpose of excluding such person from such office or franchise.—Code, §§ 5453, 5465.

The demurrers make the point that, as the information shows that respondent is in the exercise of a lawfully created franchise, it states no cause of action under this statute—which, it is contended, applies only

to the assumption of a franchise not lawfully created, and not to the misuse or abuse of one actually existing. It is to be noted that actions lie, under section 5450 of the Code, against corporations only, for specified omissions or misconduct, for the purpose of excluding them from privileges or franchises and dissolving the corporations.

Looking alone to the language of section 5450, we might reasonably give to it the construction contended for by respondent, viz., that "unlawfully exercising" a franchise means exercising it without authority of law. This would be its strict, and perhaps its more natural, meaning. But we cannot so view it. Of the scope of our statutory remedy this court long ago declared that the "system was manifestly intended to be, and is, a complete one, *covering the whole subject,* taking the place of the common-law remedy.   *   *   *   Indeed, the statutory system preserves, substantially, the principles of the common-law remedy, only regulating, as within perfect legislative competency, by whom, in whose names and behalf, and by what procedure, public and private rights, *which the common-law information was adequate to redress,* should be set on foot and adjudicated."   (Italics ours.)—*State v. Elliott,* 117 Ala. 172, 23 South. 43.

It is certain that the remedy at common law embraced the annulment or revocation of franchises for their abuse, independently of the forfeiture of corporate charters; and it is certain also that a right of action on that ground can be traced, if it now exists, only to the language of subdivision 1 of section 5453. It is, of course, to be conceded that the argumentum ab inconvenienti can never justify a court in stretching the language of a statute beyond its reasonable import in response to supposed necessity. But, nevertheless, that

argument may weigh heavily in the judicial choice of
a liberal rather than a narrow interpretation, and may
justify, and even demand, the adoption of the broadest
interpretation that is consistent with reason.    To quote
an eminent commentator on this subject:  "When the
remedy by information in the nature of quo warranto
has been regulated by legislative enactments, these en-
actments are regarded by the courts as in the nature of
remedial statutes, to which a strict construction is not
to be applied.   In such cases the usual rules of con-
struction of remedial statutes are held applicable, and
the courts will so construe them as to promote and ren-
der effective the remedy sought."—High on Ex. Leg.
Rem. § 622.

The language here in question is:   "When any per-
son usurps, intrudes into, or unlawfully holds or ex-
ercises   *   *   *   any franchise within this state."   In
view of the manifest purpose of the Legislature in the
enactment of our several statutes on this subject, it is
not a strained interpretation of the phrase "unlawfully
exercises" to give to it a broader meaning than its prior
alternative "usurps," and to hold that it comprehends
the unlawful use or abuse of an actually existing fran-
chise, and not merely the unauthorized assumption of
one.

This, it is to be observed, acquits the Legislature of
the inexplicable folly of renouncing for the state its un-
questionable right to proceed against corporations for
the forfeiture by abuse of particular franchises, without
at the same time taking the life of the corporation, and
of renouncing also its right to forfeit such franchises
in individuals in any case—for section 5450 applies
only to corporations—and, finally, of immunizing
against this important and vital remedy all foreign cor-
porations holding and exercising franchises within this

state, however they might abuse them. All of these results would follow the construction contended for by respondent. We are satisfied the Legislature did not intend such results, and do not doubt that the language of the statute was intended to embrace, and is broad enough to embrace, actions for the forfeiture of franchises for abuses of sufficient gravity to justify such judicial action.

In this conclusion we are not without the support of eminent judicial authority. Our statutes (section 5450 and section 5453) are as to their specifications literal copies of the original New York statutes as found in 2 Rev. St. of New York, 1829, § 28 art. 2, c. 7. See *Thompson v. People,* 23 Wend. 537; *People v. Directors, etc.,* 23 Wend. 222; and Gilbert's Ann. Code of New York (1910) §§ 1798 and 1948.

In the case of *People v. Blecker St. & F. R. R. Co.,* 140 App. Div. 611, 125 N. Y. Supp. 1045, which was an action by the state for the forfeiture of certain municipal franchises, the main question was upon demurrer whether the information stated any cause of action under the Code. Said the Supreme Court: "The Legislature in abolishing the writ of quo warranto did not intend to deprive the court of jurisdiction in cases of this kind. It was merely intended to change the form of procedure and that the relief which formerly was obtained by quo warranto and by informations in the nature of quo warranto and by scire facias should be had in actions or by motions as prescribed in the Code of Civil Procedure. [Citing authorities.] We should expect, therefore, to find by some appropriate provision of the Code of Civil Procedure authority conferred on the Attorney General to maintain such an action, and we think it was conferred by section 1948, subd. 1. That section, so far as material, provides as follows:

[State, ex rel. Weatherly, et al. v. Birmingham Water Works Co.]

'The Attorney General may maintain an action, upon his own information, or upon the complaint of a private person, in either of the following cases: (1) Against a person who usurps, intrudes into, or unlawfully holds or exercises, within the state, a franchise or a public office, civil or military or an office in a domestic corporation.' * * * And since as has been seen, provisions of section 430 of the Code of Procedure and of section 1798 [the same as section 5450 of the Code of Alabama] of the Code of Civil Procedure—now section 131 of the General Corporation Law—were not appropriate to an action brought solely to oust a corporation from the unlawful exercise of a franchise as distinguished from an action to annul the corporation, therefore section 1948 of the Code of Civil Procedure should be construed as conferring such authority since it is susceptible thereof." These conclusions, with others stated in the opinion, were affirmed by the Court of Appeals.—S. c., 201 N. Y. 594, 95 N. E. 1136. That this construction of the statute has always been recognized by the New York courts is apparent from the early decisions.—*People v. B. & R. Turnpike Co.,* 23 Wend. 222; *Thompson v. People,* 23 Wend. 537.

So the Supreme Court of Wisconsin, construing their statutes which are literal copies of the original New York statutes, and adopted therefrom, in an able opinion by Marshall, J., has announced the same conclusion.—*State v. Portage City Wtaer Co.,* 107 Wis. 441, 83 N. W. 697. See, also to the same effect, *State v. Port of Tillamook,* 62 Or. 332, 124 Pac. 637.

Our attention is called to the irreconcilable conflict between the recent cases of *State, ex rel. Sigsbee v. City of B'ham,* 160 Ala. 196, 48 South. 843, and *City of N. B'ham v. State, ex rel. Sparks,* 166 Ala. 122, 52 South. 202, 139 Am. St. Rep. 17, Ann. Cas. 1123; the former

case holding that quo warranto is the appropriate remedy for testing the validity of the extension of municipal government over new territory, while the latter case, overlooking the former, holds that injunction, and not quo warranto, is the remedy to be used.

It would seem, on principle, that injunction would be an adequate remedy to prevent the invasion of private rights by municipal officers acting unlawfully because intruding beyond the lawful limits of their territorial jurisdiction or authority. But it would seem, also, that when the municipality itself intrudes as such into non-municipal territory, it is usurping a franchise the right to which can be and ought to be tested and determined by quo warranto at the suit of the state. See *State v. Board of Commissioners,* 66 Minn. 519, 68 N. W. 767, 69 N. W. 925, 73 N. W. 631, 35 L. R. A. 745; *Atlee v. Board of Supervisors,* 94 Mich. 562, 54 N. W. 380; *People v. Peoria,* 166 Ill. 517, 46 N. E. 1075; *Ogle v. Belleville,* 143 Ill. App. 514, affirmed in 238 Ill. 389, 87 N. E. 355; *State v. Tillamook,* 62 Or. 332, 124 Pac. 637; *State v. Collegeview,* 88 Neb. 232, 129 N. W. 296; *East Dallas v. State,* 73 Tex. 371, 11 S. W. 1030; and many other authorities cited in note to *Uniontown v. State,* 145 Ala. 471, 39 South. 814, 8 Ann. Cas. 320, 323.

This is the view of the writer, but the court does not feel authorized to resolve the conflict noted in our cases until the question dealt with therein is specifically presented. It will suffice for present purposes to say that in so far as the decision in the *Sparks Case,* 166 Ala. 122, 52 South. 202, 39 Am. St. Rep. 17, 21 Ann. Cas. 1123, is based upon a construction of section 5453 of the Code at variance with the conclusions herein announced, it is expressly disapproved.

With respect to the last amendment to the information, intended to bring it within the scope of section

5450 of the. Code, respondent makes the point that an amendment shifting the information from section 5453 to section 5450 is not allowable for the reason that under section 5453 a jury trial may be demanded by either party, while under section 5450 the trial must be by the court.   This objection is purely technical in this case, if indeed it might ever be meritorious, since no jury trial had been demanded at the time of the amendment. Moreover, as heretofore indicated, we think the information as first amended stated a case also under section 5450, authorizing the relief available under that section under the general prayer for appropriate relief.

Turning now to the substance of the charges presented by the information, we state the following conclusions:   (1) Specifications A to I, inclusive, and Q, R, S, and U sufficiently and clearly charge that the water actually supplied by respondent to its consumers was not wholesome.   This charges not only a violation of the most vital requirement of the franchise ordinance, but a violation also of the charter itself; for water which is not wholesome is certainly not "good and pure."   Obviously, the vice of respondent's conduct in this particular must be determined in view of all of its derelictions, since willfulness and persistency therein must be the basis for the judicial action sought.

(2) Neglect, though willful, to supply any particular persons with water, is not an offense on the part of respondent, unless it amounts to a refusal to do so upon reasonable and proper demand.   Hence specifications J, K, and L show no breach of duty by respondent. Properly amended, they might unquestionably charge offenses so willful, so numerous, and so repeated as to show prima facie a good cause of action.

(3) The duty of supplying water to the fire hydrants located on its mains with sufficient pressure for their

reasonable use is, of course, necessarily implied from the general specifications of the ordinance. But we do not think that the mere willful neglect to supply six of these hydrants with sufficient water pressure, in the absence of circumstances of abuse or aggravation, is alone sufficiently vital to authorize a forfeiture of the franchise.

Nevertheless, we think that all willful breaches of clear duty may in combination be properly considered upon the general question of willful and persistent abuse of the franchise; and may, if sufficient in number and gravity, justify a forfeiture—a conclusion to be reached, however, upon a trial on the facts, and not upon a consideration of the pleadings merely.

(4) Where a duty or restriction is not expressed in terms, and does not arise by clear and necessary implication, a violation thereof cannot be fairly regarded as a willful and culpable breach of duty if done in good faith under claim of right. The proper course in such cases is to test the right of the matter by other appropriate remedial action; and, if the judgment of the court establishes the duty adversely to the service company, thereafter a willful breach would be culpable in the sense now under discussion.

We judicially know that the alleged duty of respondent to lay service pipes from its mains to the property lines of applicants for water service, as an implication of law, is a mooted question as to which the courts of the county have not uniformly agreed.

In this state it is not yet settled, and, however we might be disposed to view it, we do not regard it as a willful and culpable breach of duty by respondent to now decline to furnish such pipes at its own expense; though it is proper to say that the great weight of authority in other states seems to recognize and impose

the duty in question. Our own case of *Montgomery L. & W. P. Co. v. Watts,* 165 Ala. 370, 51 South: 727, 26 L. R. A. (N. S.) 1109, 138 Am. St. Rep. 71, though perhaps germane, is hardly decisive of this question.

(5) By the terms of the franchise ordinance and contract as construed by this court (*Smith v. B'ham W. W. Co.,* 104 Ala. 315, 16 South. 123), respondent is bound to furnish water to domestic consumers at stated flat rates, for dwellings, water-closets, and bath tubs. To charge such consumers at meter rates is a breach of the franchise obligation, and is equally a breach of charter limitation as set forth in section 8 thereof. To do so willfully and persistently must be deemed prima facie an abuse of its franchise and an offense against the law of its creation, of sufficient gravity to authorize the forfeiture of either. Specification P sufficiently charges this offense.

(6) Specifications AA and BB, as added by last amendment, sufficiently charge a breach of the fundamental duty prescribed by respondent's charter to furnish a supply of "pure" water to its consumers. Of course, "pure," as here used, does not mean chemically pure, but only such freedom from foreign matter and bacterial elements as to render the water wholesome, and fit, and safe for domestic use.

It is not necessary that the information should explain why the water is not pure, or set out the evidence upon which the charge is based. Impurity is in itself a fact and not a conclusion.

Looking to the substance of the information, as first amended, it must be deemed of no material importance that the misconduct specified is charged to be a breach of the "franchise contract," instead of the franchise merely, since, being identical in terms, a breach of one must be a breach of the other. Nor that the special

[State, ex rel. Weatherly, et al. v. Birmingham Water Works Co.]

prayer seeks a forfeiture of "franchise contracts" as well as exclusion from privileges and franchises.

The merit of the information rests upon neither the theory of the pleader, nor his notions of the appropriate relief to be granted, but primarily upon its allegations of misconduct. If these be sufficient to show a cause of action, the court may administer such appropriate relief as is germane to the general nature and purpose of the proceeding.

We hold, however, that under our system the relief administered must be confined to either section 5465 or section 5466 of the Code. A single proceeding cannot comprehend a duplex action under both section 5450 and section 5453. And if the allegations would support relief under either, the petitioner must elect to proceed under the one or the other.

It results from what we have said that the trial court erred in sustaining the demurrers to the information as first amended, and also as last amended.

The judgment will be reversed, and the cause remanded, so that the information may be reframed, and the cause proceed to trial in accordance with the principles above enunciated.

Reversed and remanded.

DOWDELL, C. J., and McCLELLAN, SAYRE, and DE GRAFFENRIED, JJ., concur. ANDERSON and MAYFIELD, JJ., dissent.

MAYFIELD, J.— (dissenting).—I cannot fully concur in either the opinion or the decision of the majority. In my opinion the majority have in part misconstrued our statutory proceeding in the nature of quo warranto, under which this proceeding is filed. It is decided in this case that a private corporation, as an entity, may be proceeded against under section 5453 of

[State, ex rel. Weatherly, et al. v. Birmingham Water Works Co.]

the Code, for a mere failure to properly discharge the duties enjoined upon it by its charter; and that if it be shown that it has failed to properly discharge such duties, as to any of its franchise rights, it may be deprived of such franchise right, on account of such neglect, though its charter be not vacated nor its corporate life taken. I cannot agree to this. The statute does not so provide, and I know of no power or authority, in this court or any other court, to amend or extend a statute; and in my judgment this is the effect of the decision.

Our statutory system in the nature of, and as a substitute for, the common-law writ of quo warranto, provides in unmistakable language that, if the state desires to proceed against a corporation as such, the proceedings must be had under section 5450 of the Code; and that if you desire to proceed against individuals for usurping office, or corporate or franchise rights, you must proceed under section 5453 of the Code. To show that this is true, you have to read the two sections in connection with each other. They read as follows:

"An action may be brought, in the name of the state, against the offending corporation, on the information of any person for the purpose of vacating the charter, or annulling the existence of any corporation, other than municipal, whenever such corporation—(1) Offends against any of the acts creating, altering, or renewing such corporation. (2) Violates the provisions of any law, by which such corporation forfeits its charter, by abuse of its powers. (3) Has forfeited its privileges or franchises by failure to exercise its powers. (4) Has done or omitted any act which amounts to a surrender of its corporate rights, privileges, and franchises. (5) Exercises a franchise or privilege not conferred on it by law."—Section 5450.

"An action may be brought in the name of the state against the party offending, in the following cases: (1) When any person usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise within this state, or any office in a corporation created by the authority of this state. (2) When any public officer, civil or military, has done or suffered any act, by which, under the law, he forfeits his office. (3) When any association, or number of persons, acts within this state as a corporation, without being duly incorporated."—Section 5453.

The only possible event or contingency in which a corporation can be proceeded against, under the latter section, is expressly provided in section 5456 of the Code, which reads as follows: "When the action is against persons acting as a corporation without being duly incorporated, the alleged corporation may be joined as a party defendant, and such joinder does not admit its corporate existence, or otherwise prejudice the case of the plaintiff; a judgment and execution may go against it by its alleged corporate name, as in other cases."

Our statutory system had existed for more than 50 years before section 5456 ever appeared as a part of it, and before which there was no authority for proceeding against the corporation under section 5453, and there is now no authority except in the case provided for in the statue. If the corporation could have been proceeded against under section 5453, prior to the adoption of section 5456, which first appeared in the Code of 1896, what was the use of section 5456, and why limit its application to the case mentioned in the statute? That section 5453 did not apply to corporations, and that they could not be proceeded against by virtue of it was in effect decided by this court in the case of *Leigh v.*

*State,* 69 Ala. 261, 266, in which the Solomon of this court, speaking for the court, and with special regard to the subject of section 5453, then section 3422 of the Code of 1876, before the enactment of section 5456 of the present Code, said: "Our statutory system, and the common-law writ, its prototype, have ordinarily but two functions; and the writ runs only against a natural person, or collection of natural persons. It inquires by what right the person proceeded against exercises official authority, and it determines the question of his right to exercise such authority. And it inquires by what right any number of persons, one or more, exercise or enjoy a franchise, and determines that right. The judgment either quashes, or, what is the same thing, dismisses the information, or it ousts from the office or franchise. 'It can afford no relief for official misconduct, and cannot be employed to test the legality of the official action of public or corporate officers.'— High, Ext. Leg. Rem. § 618."

It having been thus decided that the writ issued under section 5453 ran against "natural persons or a collection of natural persons," and not against artificial or corporate persons, and that its only object was to inquire "by what right any number of persons, one or more, exercised or enjoyed a franchise, and determined that right," and that it afforded "no relief for official misconduct, and that it could not be employed to test the legality of the official action of public or corporate officers," and the statute having been re-adopted with this theretofore undoubted construction, section 5456 was adopted as a part of the system to authorize proceedings against the corporation in one case only, mentioned in section 5456 of the Code.

It is true that section 1 of the Code provides that the word "person," when used in the Code, includes "cor-

27—185

porations"; but this section, or its progenitor, was early construed to have limitations, one of which was that the word "person" did not include "corporation," if to so read it rendered the statute inharmonious—as it will certainly do in the case at bar.—*Mayor v. Rowland,* 26 Ala. 498, 503. In this case it was said: "The statute, it is true, authorizes any person to be summoned as a garnishee (Code, § 2516), and section 1 of the Code declares that the word 'person,' when used in it, includes a corporation as well as a natural person; but this must be understood only of such provisions as will allow this signification to be given without violating their evident sense and meaning. When by the context it is clear no such meaning was intended, and when by thus construing the word 'person' it would render the Code, which must be taken as a whole, incongruous, we must depart from the letter, to give effect to the spirit and manifest meaning and intent of the Legislature."

The above-quoted language from Chief Justice Chilton could never be more aptly applied than in the case at bar. Here the statutes clearly say: "You may proceed against corporations and persons by the statutory action in the nature of quo warranto. If you desire to proceed against the corporation, you must proceed under section 5450 of the Code, for one of the five offenses enumerated in that section. See section 5450. If you desire to proceed against a person, or an association of persons, you must proceed under section 5453 of the Code, for one of the three offenses or grounds mentioned in this section." This remained the law continuously, until the Code of 1896 was adopted, when section 5456 (present Code) was adopted, and this provision ingrafted upon the law an exception to the effect that when the proceeding was under section 5453, against persons, for acting as a corporation without being duly

incorporated, then, and only then, the "alleged" cor-
poration may be joined as a party defendant, but that
the joinder, in such case, did not admit its corporate ex-·
istence, or otherwise prejudice the case of the plaintiff..

This is therefore the only instance in which a cor-
poration may be proceeded against under section 5453..
And it has been only in such a case that a corporation.
has ever heretofore been proceeded against under sec-
tion 5453. In the case at bar, no persons are proceed-
ed against, for acting as a corporation without being·
duly incorporated, and hence section 5456 cannot apply.
I contend that under all, or any, of the facts alleged in
this complaint, it not only appears that no proceeding·
can be had under section 5453, but that it also appears,
affirmatively and authoritatively, that the state cannot
proceed under this section. If any coloring of a case is.
made, it is under section 5450, and not under section.
5453 or section 5456.

I do not believe that, before the filing of this informa-
tion in the lower court (except as I shall further show),
it was ever contended that a corporation, as such, could
be proceeded against under section 5453, except in the·
one solitary contingency provided for in section 5456.
I may be wrong in this, but I do not think I am. I have·
of necessity been required to examine all the statutes of·
a general nature, which have ever operated in this state,
and of necessity to examine every decision and opinion
of this court, from the first one reported in Minor to the·
the last one reported in 174 Alabama; and I must con-
fess that I have never seen a statute or a decision (un-
less it be the one in *Tillis v. Brown,* 154 Ala. 403, 45·
South. 589) until this one, which in my judgment would
authorize a proceeding under section 5453 of the Code,
under the facts averred in the information in this case..
To my mind this decision and opinion is revolutionary;.

it institutes, and gives sanction to, a practice never heretofore dreamed of, and which is counter to everything ever heretofore enacted by the Legislature or decided by this court.

It was never contemplated by those who drafted or enacted section 5453 of the Code that one of the franchise rights of a corporation properly granted, should be taken away from it, for a failure to exercise such franchise right, or for the improper exercise thereof. This much is made certain by section 5450 of the Code, which makes a failure to exercise its privileges, franchises, or powers a ground for forfeiture, for the complete vocation of its charter, for the annulment of its existence as a corporation.

Under our statute a forfeiture of any one of a corporation's franchise rights is made a specific cause or ground for the annulment of the corporation's entire charter and its corporate existence. I concede that but for our stattues a franchise right, once granted, might be taken from a corporation for "neglect, abuse, or surrender," without further disturbing its charter. But our statute (section 5450 of the Code) makes a forfeiture of any franchise right or power a ground for vacating the charter or annulling the existence of the corporation under the same section, and provides that in such cases "judgment must be rendered that the corporation be excluded from such corporate rights, privileges, and franchises, and be dissolved." The only instance in which a corporation can be proceeded against for exercising a given franchise not granted or conferred is where the corporation itself has usurped, or unlawfully holds or exercises, such franchise. Section 5453 of the Code applies only where there is a holding, or an exercise, of franchise rights by individuals without authority of law; it has not now, and has never had,

any application to a failure to hold or to exercise the powers of an office or a franchise, which the person or the corporation had the legal right to hold or to exercise, nor to a negligent or corrupt holding or exercise thereof. For such offenses the person is impeached and removed from office, or the corporation is deprived of its franchise and its charter, as a penalty. Or, if the offense is not serious, long-continued, willful, or inexcusable, the proper performance of these duties is sometimes compelled by mandamus, or the breach thereof prevented by injunction or some other appropriate remedy.

In other words, section 5453 is to prevent action by a person or corporation not lawfully authorized to act; while section 5450 is to punish a corporation which is authorized to act, for its failure to act, or for the doing of the act improperly, and to prevent it from further exercising rights which it possesses.

There is no complaint in this case that the corporation proceeded against has no right to exercise the functions here complained of; the whole theory is that the corporation has the right, and that it is its duty, to exercise the franchise rights, but that it has failed to properly exercise such franchise rights and to discharge the duties imposed upon it by the grant which conferred the franchise rights. For this reason, there is shown no color of right to proceed under section 5453 of the Code. The proceeding, therefore, of necessity, must be under section 5450 of the Code. It cannot be under both sections, because the facts necessary to authorize the proceeding under the one would absolutely, affirmatively, deny the right to proceed under the other. I do not mean to say that the information or complaint at present filed in this case is sufficient to authorize the state to proceed under section 5450 of the Code; but I do say

that the facts alleged affirmatively show no right to pro-
ceed under section 5453.

The basic error in this decision, and in the majority
opinion, is in treating a mere failure to perform and
discharge the duties imposed by the grant of franchises,
as an "unlawful exercise" of the franchises within the
meaning of section 5453 of the Code. I take it that the
"unlawful exercise" of a franchise, within the meaning
of this section, is the exercise of the franchise without
authority of law. This interpretation is conclusively
borne out by the context, and by other words used in
the same phrase and connection, such as "usurps" and
"intrudes into." You cannot usurp nor intrude into an
office, if the law makes it your duty to hold the office
and to exercise the powers and discharge the duties
thereof; and if the law confers rights, and imposes du-
ties, upon you as to such office, your failure, total or
partial to exercise the functions and to discharge the
duties, does not make you an intruder or an interloper.
The same is necessarily true as to a franchise which a
corporation as well as an individual may hold and ex-
ercise. This seems to me to be so plain that argument
or reasoning cannot make its meaning clearer or more
certain.

If the information in the nature of quo warranto is
intended to oust the defendants from acting as a corpor-
ation and to test the fact of the incorporation, it must
of necessity be filed against individuals; but if the ob-
ject is to effect a dissolution of the corporation which
has an admitted existence, or is merely to oust such
corporation from some franchise which it is unlawfully
usurping, the information must then be filed against the
corporation as an entity.

If the proceeding is to forfeit a franchise lawfully ac-
quired and held, for neglect of public duties enjoined

by the grant of the franchise or by other law, or for abuse of a franchise lawfully acquired and held but wrongfully exercised, the information must set forth the facts with that exactness required in pleadings claiming penalties. The information in such case must not only show a sufficient cause of forfeiture, but must set forth the facts and the data on account of which the forfeiture is demanded. If, however, the object of the proceeding is to oust individuals or corporations of franchises which the state asserts that it has never granted, then the proceeding is analogous to the ancient writ of quo warranto which was a prerogative writ, and in such case its purpose is merely to require the defendant to show by what right he holds or exercises the office or franchise. In such case the information has no analogy to an indictment or to a declaration. To illustrate by referring to our statutes, if you proceed under section 5450 of our Code, upon complaint or information, as it is indiscriminately called, the allegations are analogous to those in indictment or declarations claiming penalties, and must clearly and succinctly set forth the facts and data which show a forfeiture of the charter or franchise right which is alleged to have been granted; but, if you proceed under section 5453 of the Code, you merely require or request the defendant to show his or its authority for holding the office or usurping the franchise which you allege has never been granted to or conferred upon the defendant. In this last case it is a complete answer to the information to say that the sovereign has granted to or conferred upon the defendant the office or franchise complained of, and then set out the charter or grant, if required to be in writing.

Under section 5450 of the Code, you allege that the defendant corporation has the right to use the franchise,

but that it has failed to discharge the duties imposed upon it as a consideration of the grant; and that, as a penalty therefor, it has forfeited its charter or its franchise right, as the case may be. While, under section 5453, you require the defendant, individual or corporation, to come in and show by what right or authority he or it holds such office or exercises such franchise right; and, if he or it cannot show such right or authority, a judgment of ouster as to such office or franchise is entered.

Under section 5453 of the Code, the defendant or respondent must either disclaim the office or franchise, or affirmatively show authority to hold or to exercise the same; a plea of not guilty is no answer, because the complaint or information requires the defendant or respondent to show by what authority he holds the office or franchise in question. The only appropriate pleas under this section are those of disclaimer or of justification. The plea of justification is essentially a plea asserting title to the office or franchise, and must set out the source of the title claimed by the respondent. If the plea shows a bad title, judgment may be rendered against the defendant on demurrer to the plea.

The information in this case not only admits, but affirms, that the respondent was properly incorporated and properly invested by grant with title to the franchises complained of; it does not attempt to show that its franchises have been usurped, but alleges that the same are misused, and therefore forfeited; and that for this reason the franchise should be returned to the state, the sovereign, from whence it proceeded.

Judgment of seizure of the franchise is the only judgment proper to be rendered, if the allegations be sufficient. Such a judgment is the only judgment contemplated under section 5450 of the Code. The judgment

contemplated, when the proceeding is under section 5453 of the Code, is one of ouster merely—not one of forfeiture or of seizure—and the section provides for the cases only where there has never been any grant or vesting of the office or franchise in the respondent. The judgment, when the proceeding is under the last section, is that the assumed or usurped office or franchise has never been granted to or vested in respondent, and that the claim thereto is null and void, and that it be divested out of the respondent and revested in the sovereign, as under section 5450.

The forms of judgment prescribed by sections 5465 and 5466 of the Code show this: Section 5465 shows the kind of judgment to be rendered when the proceeding is under section 5453; and section 5466 shows the kind of judgment to be rendered when the proceeding is under section 5450. The majority opinion proceeds upon the idea that the kind of judgment prescribed by section 5465 can be rendered under an information like the one filed in this case. To this I cannot agree. The only judgment which can be rendered on an information containing the allegations which the one in question contains is one of the kind described in section 5466 of the Code. How could any court adjudge this respondent guilty of usurping, intruding into, or unlawfully holding or exercising its franchise, when it is alleged repeatedly that the franchise was lawfully granted, and that both the law and the contract enjoined the duty of exercising it? Such a judgment on such an information could not be supported. The judgment would not only fail to be supported by the pleading, but would be plainly and exactly contradicted thereby.

The opinion has also misconceived the statute as to the right of jury trial. It is said that each of the parties has the right to demand a jury trial, at the time,

and in the mode, specified in section 5458 of the Code, if the proceeding is had under section 5453; but that neither has such right if the proceeding is had under section 5450. The statute makes no such distinction, and I see no reason for the distinction. To my mind the court in effect amends the statute. I do not think the authorities cited support the conclusion, but, if so, they are to my mind as clearly wrong as this case would be, if it were the pioneer announcing such construction. How any one can read this section of the Code, to wit, section 5458, and say that it refers or relates to section 5453, but not to section 5450, is more than I can understand.

The history of section 5458 is well known. This court held that in proceedings under this article of the Code, relating to quo warranto, the Constitution did not guarantee the right of jury trial, and that, in the absence of a statute to that effect, the court might try without a jury. The Legislature, to meet this decision, passed the act of February 21, 1893, which is codified as section 3425 of the Code of 1896, and brought forward as section 5458 of the Code of 1907; and this statute provides that either party may demand and secure a jury trial, if moved for within the time and in the mode prescribed under the statute; and how it can be said that it applies only when the proceeding of quo warranto, or the information in the nature thereof, is brought under one section of that article of the Code, and not under the other, is more than I can understand.

The opinion in this case modifies, if it does not overrule in terms, one or more decisions in this court. To this part of the opinion I cannot agree. There may be some other erroneous decisions of this court on the subject of quo warranto proceedings, but in my opinion they are not those pointed out in the majority opinion.

[State, ex rel. Weatherly, et al. v. Birmingham Water Works Co.]

If any of the cases cited in the majority opinion support the conclusion reached in this case, I must say that I do not so read the case cited. In my judgment the cases cited were construing statutes different from ours. The statutes therein construed did contain provisions very much like section 5453 of our Code; but they did not contain sections like 5450 of our Code, provided expressly for all cases against corporations, or else they contained other provisions expressly authorizing proceedings against corporations, similar to the proceedings contemplated in section 5453 or other sections like it.

The fact (which the majority opinion entirely overlooks) is that there are other sections of our Code which exclude corporations from the operation of section 5453 if the section, standing alone, would allow it. The majority opinion also overlooks or ignores the fact that, if a corporation can be proceeded against under this section, it cannot be so proceeded against unless it is alleged that it has done one of the things specified in one of the three subdivisions of that section; and I do not think that it can be said that it is averred, or attempted to be averred, in this information, that the defendant corporation has done, or is doing, anything prohibited in either of those subdivisions.